169 N.J. Super. 140 (1979)
404 A.2d 352
WILLIAM T. POTTER, PLAINTIFF-APPELLANT,
v.
PATRICIA M. POTTER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1979.
Decided June 25, 1979.
*142 Before Judges CONFORD, PRESSLER and KING.
Mr. Richard D. Schibell argued the cause for appellant (Messrs. Shebell & Schibell, attorneys).
Mr. Michael D. Farren argued the cause for the intervenor Monmouth County Welfare Board (Mr. Raymond B. De Ridder, attorney).
No appearance for the respondent Patricia M. Potter.
The opinion of the court was delivered by PRESSLER, J.A.D.
This is a post-judgment matrimonial action in which the disputants are plaintiff William T. Potter and the intervenor Monmouth County Welfare Board (Welfare). The subject of the dispute is the status of a retroactive social security disability payment received by defendant wife for the benefit of the minor children of the marriage and the effect of that payment on plaintiff's obligation, if any, to the welfare board and in respect of child support arrearages.
*143 Insofar as we are able to ascertain from this minimal record and the representations of counsel at oral argument, the parties were married in 1961 and had four children, respectively born in 1961, 1963, 1967 and 1969. It appears that plaintiff became disabled as a result of a work-connected accident sustained by him in April 1975, and it is represented that he has not worked nor been able to work since that time.[1] The marital relationship had apparently already been in the state of progressive deterioration for several years, and in July 1975 plaintiff left the marital residence  forced to do so, he alleges, by reason of defendant's acts of cruelty towards him. At that time defendant apparently applied to Welfare for assistance for herself and her children and was accorded a monthly grant. In September 1975 she made an assignment in favor of Welfare of her own and the children's right to support from plaintiff and also commenced a support action against him in the Juvenile and Domestic Relations Court. That action resulted in the entry of an order requiring him to make weekly payments of $70 for the support of his wife and children, plus payments on the mortgage on the house. He did not, however, make any payments on account of that order, ostensibly because of his disability and consequent unemployability, and was in arrearage thereon in the amount of $1,307 on May 13, 1976 when, on his motion for relief based on his physical condition, the Juvenile and Domestic Relations Court suspended his obligation to make any future payments.
In January 1977 plaintiff instituted this divorce action by a complaint which, as required by R. 4:77-1(c), referred to the Juvenile and Domestic Relations Court action above described and recited the facts both as to the original order and the stay thereof. A final judgment of divorce was entered on August 25, 1977. Despite the requirements of R. *144 5:6-3(b), neither the court nor a party caused the Juvenile and Domestic Relations Court Clerk to certify to the Chancery Division the amount of the arrearages on the lower court order, and the final judgment was silent in respect thereof. It does not appear possible at this point to reconstruct the reason for that silence. It might have been because of oversight, or because the May 13, 1976 lower court order intended to relieve the husband from accrued arrearages, or because the Chancery Division judge opted to do so or because of some other consideration not apparent in the record. At any rate, by administrative action, the Juvenile and Domestic Relations Court closed its file in the matter on September 29, 1977, noting that the Chancery Division divorce judgment had superseded any outstanding order of the lower court.[2]
*145 The support provision contained in the August 1977 judgment of divorce was, in our view, ambiguous in the extreme. No alimony was allowed defendant-wife, and this apparently as a result of agreement between the parties. With respect to child support, the judgment provided that "plaintiff shall pay to the defendant the sum of $250.00 per month, * * * which monies shall accrue and not be deemed due and payable until said plaintiff resumes normative work activity." As of the date of oral argument before us, nothing has been "due and payable" pursuant to this judgment since, as all parties agree, plaintiff has not resumed work activity of any kind. The problem here relates to the accrual provision, assuming that an order apparently so self-contradictory is viable at all. We note, in passing, the evident anomaly of having arrearages accrue for a period as to which the court itself has determined that there is no ability to make any payments at all. We would think, in such circumstances, that accruing of arrearages should be suspended for the period for which the payment obligation itself is suspended and if at some future time a party with the obligation of support obtains either the income or assets enabling him to defray the needs of his family, an appropriate order would then be entered.
In any event, not more than a month or two had passed after the entry of the final judgment of divorce when defendant received from the Social Security Administration on behalf of the children a retroactive lump sum dependent's disability payment, referable to plaintiff's injuries, in the amount of $5,192.80 as well as retroactive benefits of $784 for herself, followed by monthly payments to her for the benefit of the children in the amount of $342.80. Welfare benefits were consequently discontinued. Thus, plaintiff's unpaid obligation at the time defendant started receiving these monthly payments was at most $500 under the Chancery Division judgment and $1,307 on the Juvenile and Domestic Relations Court order. Some six months later, in April 1978, plaintiff moved the Chancery Division for an order crediting all of his arrearages with the lump sum retroactive *146 disability payments and, insofar as we are able to determine, for a determination that his adjudicated prospective support obligation was to be deemed satisfied by defendant's receipt of the monthly disability benefit, a sum in fact exceeding the adjudicative obligation. Defendant did not take a position with respect to these motions but Welfare was permitted to intervene on its motion in order to resist the application for the credit and to seek a judgment of reimbursement against plaintiff. The consequent order entered, from which plaintiff appeals, denied the credit, directed an unexecutable judgment in favor of Welfare in the amount of $7,187 constituting "accrued arrearages" and modified the August 1977 divorce judgment nunc pro tunc as of the date of defendant's receipt of the disability benefits so as to "stay" child support. We reverse.
We deal first with the judgment of reimbursement in favor of Welfare. Welfare candidly conceded at oral argument that it relies exclusively on N.J.S.A. 44:1-140 to 146, inclusive, as the source of its authority to proceed directly against plaintiff.[3]N.J.S.A. 44:1-140 provides that, among others, the father and husband of persons applying for and eligible to receive public assistance "shall, if of sufficient ability," maintain the person as shall be ordered by a court of competent jurisdiction. N.J.S.A. 44:1-143 authorizes *147 the entry of an order requiring payment of "suitable support and maintenance" for the wife and children of a deserting husband and father. And N.J.S.A. 44:1-146 permits the welfare authorities to initiate actions against chargeable persons.
It is thus clear that Welfare's right to obtain repayment from a chargeable relative in respect of any period for which it is providing support for that relative's family is predicated on two prerequisite facts: first, the ability of the chargeable relative to contribute to the support obligation which Welfare is assuming and, second, an outstanding order of the court determining the chargeable relative's ability and directing the manner of payment. It is equally clear that these prerequisites are not here present. Plaintiff has been continuously unemployed and apparently unemployable since before the entry of the first lower court order and the commencement of defendant's receipt of welfare assistance. That fact was indeed recognized by both the Juvenile and Domestic Relations Court and the Chancery Division here, the first court suspending its support order for that reason and the second relieving plaintiff of any obligation to pay support until a return to work. Indeed, rather than finding an ability to contribute to his family's support while it was receiving welfare, the court reached the exact contrary finding. We are satisfied, therefore, that there was no basis at all here, in law or in fact, for the entry of the judgment in Welfare's favor.[4]
We now address the question of the credit sought by *148 plaintiff. While that question has not been heretofore addressed in a reported decision in this jurisdiction, the majority of jurisdictions in which the problem has been raised hold that ordinarily a father is entitled to credit on his child support obligation for Social Security dependency payments made directly to his children or for their benefit. The rationale underlying this view is that such payments are not gratuities but were earned by the wage earner during his period of employment and that they constitute in effect insurance payments substituting for lost earning power. See Potts v. Potts, Iowa, 240 N.W.2d 680, 681 (Sup. Ct. 1976); Binns v. Maddox, 57 Ala. App. 230, 327 So.2d 726, 728 (Civ.App. 1976); Andler v. Andler, 217 Kan. 538, 538 P.2d 649, 653 (Sup. Ct. 1975); Cohen v. Murphy, 368 Mass. 144, 330 N.E.2d 473 (Sup.Jud.Ct. 1975); Horton v. Horton, 219 Ga. 177, 132 S.E.2d 200, 201 (Sup. Ct. 1963); Cash v. Cash, 234 Ark. 603, 353 S.W.2d 348, 350 (Sup. Ct. 1962). Those cases which have held to the contrary have done so not because they have rejected as a matter of law the principle that such payments are allowable as credit but because of other financial circumstances suggesting the appropriateness of considering those payments as only one of the relevant factors to be taken into account in delimiting the father's support obligation. See, e.g., Fowler v. Fowler, 156 Conn. 569, 244 A.2d 375 (Sup. Ct. 1968); Chase v. Chase, 74 Wash.2d 253, 444 P.2d 145 (Sup. Ct. 1968); Joachim v. Joachim, 57 A.D. 2d 546, 393 N.Y.S.2d 63 (App. Div. 1977), app. dism. 42 N.Y. 2d 1101, 398 N.Y.S.2d 535, 368 N.E.2d 285 (App. Ct. 1977), cert. den. 434 U.S. 1066, 98 S.Ct. 1242, 55 L.Ed.2d 767 (1978).
We need not decide in this case whether or not a parent has the absolute right to have Social Security disability payments to dependents automatically credited to his adjudicated support obligation since we are satisfied that that result must here obtain in view of the operative circumstances. The amount of the lump sum payment is in apparent *149 excess of all arrearages, however they may be calculated. There was no adjudicated support obligation prior to the incurring by plaintiff of the disability compensated for by the Social Security payment. The entire period for which the adjudicated support obligation accrued was a period during which plaintiff was unable to work and hence the Social Security payment here must be regarded as fully substitutionary for the lost earning power. It does not here appear that plaintiff had any other income sufficient to meet the support obligation or that his failure to provide support was in any way willful or contumacious. In our view, therefore, the receipt by defendant of the lump sum payment is equitably required to be deemed in full satisfaction of any outstanding obligation of plaintiff which had accrued as of that time.
We have heretofore noted that the judgment here appealed from took cognizance of the family's receipt of regular monthly disability payments by "staying," as of the date of commencement of such receipt, the support obligation directed by the original judgment of divorce. In our view, the more appropriate disposition for the protection both of the children and of plaintiff would be an express provision in the post-judgment order stating that so long as plaintiff is unemployed and the monthly disability payments for the children continue and until further order of the court, the monthly disability payments should be deemed to constitute discharge by plaintiff of his support obligation. See also, Binns v. Maddox, supra, 327 So.2d at 728-729.
The judgment below is reversed and we remand to the trial court for entry of judgment consistent with this opinion.
NOTES
[1] It appears that following his injury, plaintiff received some workers' compensation benefits. It is not, however, suggested that they were of an amount sufficient to meet his needs or those of his family.
[2] R. 5:6-3(b) provides in full that

* * * If, subsequent to the entry of a support order in the juvenile and domestic relations court, an order for support, either pendente lite or final, involving the same parties is entered in the Superior Court, the juvenile and domestic relations court, on its own motion or on application of any party, shall vacate its order for support and its clerk shall report to the Superior Court the amount of arrearages thereunder, if any. Said arrearages shall thereafter be proceeded upon in the Superior Court in the same manner as if they had accrued under an order entered by the Superior Court.
That provision was added to the rules as part of the 1969 revision for the purpose of attempting "to avoid conflicts in disposition and orders where the Superior Court and the juvenile and domestic relations court have concurrent jurisdiction." Current N.J. Court Rules (Gann ed.) at 1056. There appears to be no reported decision since 1969 dealing with the consequences, vis-a'-vis the viability of the Juvenile and Domestic Relations Court order, of the failure to comply with the certification-vacation procedure of this rule. We do not address the question because not required to do so here. We do note, however, that even if a Chancery Division order requiring future support payments were deemed to supersede a parallel and unvacated order of the lower court, it would not necessarily follow that arrearages on the lower court order, which accrued prior to the entry of the Chancery Division order, would be automatically wiped out.
[3] The reimbursement provisions of N.J.S.A. 44:10-4, implemented by N.J.A.C. 10:81-3.39, are not here directly implicated. We do note, however, that defendant did sign such an agreement with respect to her interest in the marital residence, still unsold, and that plaintiff acknowledges Welfare's right to his share of the proceeds of any eventual sale although he did not sign such an agreement. There is, in fact, an outstanding order requiring the sale of the premises, apparently uncomplied with because of defendant's refusal of cooperation. As to repayment agreements generally under N.J.S.A. 44:10-4, see In re Estate of Lisa Jackson, 79 N.J. 517 (decided May 11, 1979). We further note that future social security disability payments are exempt from legal process. 42 U.S.C.A. § 407. And see Philpott v. Essex Cty. Welfare Board, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973).
[4] We are also unable to understand the amount of the judgment. Since the order appealed from stayed the $250 accruing but unpayable order of August 1977, as of October 1977, when other disability payments began, the total possible arrearages thereunder were $500, which together with the possible viable arrearages on the juvenile order of $1307, totaled $1807. It is evident that Welfare would not in any event be entitled to recover from a chargeable relative the full amount of assistance paid but only that portion thereof which the chargeable relative was required by court order to pay.