43 A.3d 1260 (2011)
426 N.J. Super. 252
Frederick LABROSCIANO, Plaintiff,
v.
Monica LABROSCIANO, Defendant.
No. FM-04-269-09
Superior Court of New Jersey, Chancery Division, Camden County, Family Part.
Decided October 14, 2011.
*1262 Richard Roy for plaintiff (Comegno Law Group, PC, Moorestown, attorneys).
*1263 Monica Labrosciano, defendant pro se.
LEONE, J.S.C.

I. INTRODUCTION
In this case, regrettably, the mother has become disabled, and both parents have since divorced. The issue before this court is the appropriate allocation of the children's lump sum derivative Social Security disability payment in the unusual situation where primary residential custody of the minor children shifted from the disabled parent to the other parent during the period of disability for which the lump sum was paid.

II. FACTUAL BACKGROUND
Plaintiff Frederick Labrosciano and defendant Monica Labrosciano were married in 1998, and during the marriage had three children, born in 1999, 2002 and 2004. In July 2006, defendant applied to the Social Security Administration ("SSA") for social security disability ("SSD") benefits, which would include benefits for herself and derivative benefits for the parties' three children. This claim was eventually resolved in October 2010.
While defendant's SSD claim was pending, the parties separated, were divorced, and went through a shift in custody of the children. From the time of their November 2007 separation, defendant was the primary residential parent. An April 24, 2008 order provided that plaintiff should pay $250 per week in child support effective April 1, 2008. Under the final judgment of divorce dated January 7, 2009, defendant remained the parent of primary residence ("PPR"), and thus the custodial parent ("CP"), while plaintiff was the noncustodial parent ("NCP") and had parenting time.
On June 23, 2009, plaintiff filed a motion to change custody and terminate his child support obligation. In a July 2, 2009 notarized letter, defendant agreed that the three children would now reside with plaintiff, that plaintiff should be the PPR and that plaintiff should no longer pay child support to defendant. Based on the letter, the court issued a July 23, 2009 order which made plaintiff the PPR, gave defendant parenting time, and terminated plaintiffs child support obligation effective June 23, 2009.
By order dated February 19, 2010, defendant was ordered to pay child support to plaintiff in the amount of $34 per week, effective January 14, 2010, based on the assumption that defendant could now get a full-time job paying minimum wage. Defendant's arrears were set at $750 to reflect the amount of child support plaintiff paid to defendant after defendant had transferred primary residential custody to plaintiff. Defendant was to repay her arrears by paying an additional $10 per week.
In late 2010, the SSA determined that defendant's July 2006 injury was disabling, and awarded her a gross total of $61,354 of lump sum SSD benefits.
The SSA also sent three letters dated October 3, 2010 to plaintiff as the custodial parent. The three letters informed plaintiff that derivative SSD benefits had been awarded to each of the three children beginning July 2006, the date of defendant's disabling injury, and that plaintiff would receive a lump sum payment for that child of $10,355, representing the money the child was due for July 2006 through September 2010. Thus, plaintiff received lump sum derivative benefits totaling $31,065 for all three children. Each letter added that, for October 2010 and subsequent months, plaintiff also would receive ongoing derivative benefits of $181 per month for that child.
The SSA's letters noted that each child's lump sum benefit of $10,355 had been calculated *1264 to take into account December cost of living increases in 2006, 2007, and 2008. It also reflected a reduction in benefits in October 2008 because derivative SSD benefits started to be paid to another child, born to defendant and Joseph Monaco on September 14, 2008.
In February 2011, defendant filed a motion asking, among other things, that plaintiff pay her $15,204 from the $31,065 lump sum derivative benefits plaintiff had received for the three children. Plaintiff objected to defendant receiving any of the lump sum payment.
On March 25, 2011, the parties agreed, and this court ordered, that the child support being paid by defendant should cease and that any arrears owed by defendant were nullified. This court then held a further hearing on April 29, 2011, regarding the lump sum payment.
Thus, the issue before this court is whether defendant is entitled to any of the lump sum derivative disability benefits paid to plaintiff on behalf of the children under 42 U.S.C.A. § 402(d)(1)(C). This court, having received further submissions from the parties in April, May, and July 2011, and audits by Probation on both child support accounts, is now in a position to rule on the issue.

III. DISCUSSION

(A) The Existing Law Concerning Monetary Derivative Benefits

It is interesting, first, to consider what would have happened if the SSA had the ability to act instantaneouslyto find defendant disabled, and begin paying disability benefits to defendant and the minor children, simultaneously with defendant's disability injury.
Initially, the derivative disability benefits to the children would have been received by defendant as the disabled parent while both parents were in the still-intact marriage. After the couple separated, defendant, the injured parent who remained in the marital home with primary care of the children, would still have received the children's benefits; and whether she shared them with plaintiff would have been determined between the parties.
When the first child support order was entered, the "government benefits ... received by or for the child based on the parent's ... disability" from the SSA would have been "deducted from the basic support obligation" on Line 12 under the Child Support Guidelines. Pressler & Verniero, Current New Jersey Court Rules, Appendix IXA to R. 5:6A at paragraph 10(c) (2011); Sole-Parenting Worksheet, Appendix IXB at Lines 12-13.
The deduction is provided because the receipt of such benefits reduces the parents' contributions toward the child's living expenses (i.e., the marginal cost of the child). If the benefits received by the child are greater than the total support obligation (i.e., the amount of the obligation after deducting the benefits is zero), no support award should be ordered while the child is receiving the benefits. The benefits will continue to be paid by the government agency to the custodial parent in lieu of child support. If the total obligation is greater than the benefits received by the child, the non-custodial parent's income share of the residual amount (after deducting the benefits) is the support award to be paid to the custodial parent.
[Id., Appendix IXA at paragraph 10(c); see Herd v. Herd, 307 N.J.Super. 501, 503-06 [704 A.2d 1340] (App.Div.1998); see also Task v. Tash, 353 N.J.Super. 94, 103-04 [801 A.2d 436] (App.Div.2002) (same for Social Security death benefits).]
Interestingly, the Guidelines calculations "make no distinction as to which *1265 parent's [disability] benefit triggers the benefit to the child." Pasternak v. Pasternak, 310 N.J.Super. 483, 488, 708 A.2d 1235 (Ch.Div.1997) (child's benefits due to death of natural father reduces adoptive father's child support obligation); e.g., Task supra, 353 N.J.Super. at 103, 801 A.2d 436 (children's benefits due to death of mother reduces father's child support obligation to grandparents). The Guidelines have been amended, however, to acknowledge that "[t]here may be circumstances when the CP/PPR is the party who is disabled and child's share of derivative government benefits such as Social Security Disability greatly reduces child support at a time when the CP/PPR's personal income is also reduced." Pressler & Verniero, supra, Appendix IXA at paragraph 10(c). Because this "may result in an injustice to the child," the amended Guidelines provide that "deviation from the guidelines may be required to prevent a financial hardship in the child's primary household due to the substantial reduction, or possible elimination, of child support caused by the application of the deduction allowed for government benefits against the basic child support amount." Ibid.

(B) The Existing Law Concerning Lump Sum Derivative Benefits

Of course, the SSA does not have the ability to act instantaneously with the disability. The disabled parent must apply for benefits for herself, and the custodial parent must apply for derivative benefits for the children. The SSA must ascertain disability, and must then calculate and award the disability benefits and the derivative disability benefits. As a result, in addition to awarding ongoing monthly benefit payments, the SSA often awards lump sum payments representing the benefits due for the period between the time of the disability and the time disability benefits begin to be paid on a monthly basis.
The appellate division has issued three published opinions addressing the proper treatment of such lump sum derivative disability benefits. Potter v. Potter, 169 N.J.Super. 140, 404 A.2d 352 (App.Div. 1979); Sheren v. Moseley, 322 N.J.Super. 338, 731 A.2d 52 (App.Div.1999); Diehl v. Diehl, 389 N.J.Super. 443, 913 A.2d 803 (App.Div.2006). All three of these "lump sum cases" involved situations where (a) the non-custodial parent became disabled, and (b) the custodial parent remained the same throughout the period of disability covered by the lump sum payment. The holdings of these lump-sum cases in those circumstances can be briefly summarized. First,
SSD benefits are based upon the disabled worker's contributions to social security and serve as a substitute for his or her "lost earning power" during the period of disability. The child's benefit is intended to meet current needs. Although SSD benefits are paid on account of the parent's efforts and substitute for the support the parent cannot earn, the benefits belong to the child.
[Diehl, 389 N.J.Super. at 449, 913 A.2d 803 (citations omitted).]
Second, "the question of whether a supporting parent is entitled to a credit for such a lump sum payment requires an examination of the equities involved in the case." Sheren, supra, 322 N.J.Super. at 342, 731 A.2d 52. Third, Diehl, supra, 389 N.J.Super. at 450-51, 913 A.2d 803 held that a non-custodial parent "is not entitled to a credit for SSD benefits paid for" a period before divorce when the non-custodial parent "had no court-ordered support obligation."
Fourth, if the lump-sum payment covers a period when there is a courtordered child support obligation, and the non-custodial parent failed to pay and thus accrued arrears during that period, "the *1266 receipt by the [custodial parent] of the lump sum payment is equitably required to be deemed in full satisfaction of any outstanding obligation of [the non-custodial parent] which had accrued." Potter, supra, 169 N.J.Super. at 149, 404 A.2d 352. If the lump-sum payment for that period exceeds the arrears, the excess "amount belongs to [the] dependent children and cannot be credited" against the non-custodial parent's "future child support obligations." Sheren, supra, 322 N.J.Super. at 341, 344, 731 A.2d 52. Fifth, if the noncustodial parent paid in full the child support obligations for the period covered by the lump-sum payment, "absent a special showing of inequity," the non-custodial parent "should be credited with a retroactive payment of SSD benefits that do not exceed the obligor's support obligation during the benefit period." Diehl, supra, 389 N.J.Super. at 450, 913 A.2d 803. Finally, "when SSD benefits paid to the child are considered in calculating child support [under the guidelines], no further credit is permitted absent a showing of good cause for deviation from the guidelines." Id. at 453, 913 A.2d 803.

(C) Application of the Law to the Instant Case

In the instant case, as in Diehl, supra, 389 N.J.Super. at 450, 913 A.2d 803 "the question of credits for retroactive benefits is complicated because [the parties'] support obligation changed during the benefit period" covered by the lump sum payment. Indeed, the instant case is more complicated than Diehl because the lump sum disability payment covers a child support history including five different periods: (1) while the parties were together; (2) after separation, while defendant had primary care of the children, but before child support was ordered; (3) while plaintiff was under a child support order, and defendant was the custodial parent; (4) while plaintiff was the custodial parent but there was no child support order; and (5) while plaintiff was the custodial parent and defendant was under a child support order. These periods coincide only in part with the periods involved in Diehl. Moreover, unlike Diehl, here, the disabled parent was initially the custodial parent, and thereafter became the non-custodial parent, so the lump sum derivative benefits were paid to the parent who originally was the non-custodial parent. The question is what effect these differences have on the equities in each of the five periods.

(1) July 2006 Disability until November 2007 Separation
The first period covered by the lump sum derivative payment runs from defendant's July 2006 injury, when the parents and the children resided together, until the parents' November 2007 separation. This first period is subject to the rule established in Diehl, supra, 389 N.J.Super. at 447, 913 A.2d 803 for the period from the parent's injury to the effective date of the court-ordered support obligation. In Diehl, the plaintiff was injured, "[t]he parties subsequently divorced, and the final judgment [of divorce] requires plaintiff to pay" child support "effective January 1, 2003." Ibid. The Appellate Division held that the disabled "plaintiff is not entitled to a credit for SSD benefits paid" to the defendant for the period before January 1, 2003, while the "plaintiff had no court-ordered support obligation." Id. at 450-51, 913 A.2d 803. The Appellate Division concluded that "a credit for weeks during which plaintiff had no court-ordered support obligation is not equitable." Id. at 447, 913 A.2d 803.
The reasons for the Appellate Division's conclusion can readily be inferred. Prior to the existence of a court-ordered support obligation, the parents' moral obligation to support their children is neither quantified nor divided between them. Indeed, their *1267 finances are not yet legally divided, making the amounts of their support for their children, and the allocation of later lump sum benefits between them, the subject of conjecture or piecemeal proof.
More fundamentally, the Appellate Division in Diehl held that absent credit against a court-ordered support obligation, lump sum benefits "belong to the child" and are "intended to meet current needs" of the children. Id. at 449, 913 A.2d 803. Because lump sum benefits are paid after, sometimes long after, the period covered, it is no longer possible to use the benefits to improve the children's standard of living during that past period. They can only be used to improve the children's standard of living during the present. Accordingly, the lump sum benefits should equitably be directed to where they can best be used to improve the children's lives during the present. The lump sum benefits thus generally should be allocated to the person most responsible for the children's current needs, namely the custodial parent, who is in a better position to meet the children's current needs.
The situation differs when there is a court-ordered support obligation. Id. at 450-51, 913 A.2d 803. A court has forced the non-custodial parent to contribute specified sums to the support of the children. Had the amount of derivative benefits been known and paid during the period of child support, the non-custodial parent would not have been compelled to pay as much, or at all, under the Child Support Guidelines. Thus, the equities favor using the subsequent lump sum derivative benefits to provide recompense to the non-custodial parent. The amount of that recompense is readily determined based on the lesser of the amount of child support paid or owing, and the amount of lump sum derivative benefits paid for the period.
In the instant case, neither party was under any "court-ordered support obligation" during this period when they were living together. Id. at 450-51, 913 A.2d 803. Accordingly, the lump sum payment for the period should be left in the hands of plaintiff, as the current custodial parent, to provide for the children's current needs.
Because we are considering a period the parents were together, it is immaterial that Defendant later initially took on the role of the custodial parent. Diehl held that the entire lump sum benefit for the period when the parents were still together should be paid to the person who is the custodial parent at the time the lump sum benefit is paid. Ibid. Diehl did not do so because one parent did more than the other parent to raise the children during the period the parents were together, or because one parent was the first to take on the role of the custodial parent. Instead, Diehl awarded those sums to the defendant precisely because she was the custodial parent at the time the lump sum benefits were paid. As the instant case illustrates, the identity of the custodial parent can change, and it makes the most sense to direct the lump sum benefits, when they are paid, to the current custodial parent, who is in the better position to use them on behalf of the children.
It is equally immaterial that defendant was the injured parent on whose disability the derivative disability benefits were ultimately based. Here, as in Diehl, even though the "SSD benefits are paid on account of the [injured] parent's efforts and substitute for support the [injured] parent cannot earn," the children's derivative lump sum benefits still "belong to the child." Id. at 449, 913 A.2d 803. Accordingly, in the instant case, as in Diehl, the lump sum benefits for the period when the parents were together are properly left in the hands of the current custodial parent, even though they were paid because of the non-custodial parent's disability.
*1268 Put simply, defendant's request for 50% of the lump sum derivative benefits for the period when the parents were together reflects neither the existence of a contemporaneous child support obligation for which credit should be given, nor the reality of which parent is currently in the better position to use the funds to help the children. Rather, her request treats the derivative benefits as an asset of the parents, to be divided in a sort of belated equitable distribution between them. To the contrary, Diehl emphasized that "the benefits belong to the child." Ibid. The benefits are paid to a parent only because the benefits cannot be entrusted to a minor child. As a result, the benefits should be paid to the parent better situated to use them to support the children. That parent is the current custodial parent, plaintiff.
According to an accounting from the SSA, the derivative benefits paid during this first period, from July 2006 up to November 2007, are $3,528 per child. Thus, plaintiff properly retains a total of $10,584 for the three children for this first period.

(2) Separated, No Child Support November 2007 to April 1, 2008
The second period covered by the lump sum payment runs after the November 2007 separation, but before plaintiffs court-ordered child support obligation commenced effective April 1, 2008. Although defendant contends that she should receive 100% of the lump sum benefits from this period, this court views the second period in the same light as the first period.
First, although the effect of separation was not squarely presented in the lump sum cases, none of those cases distinguish between the period when the parents are together and the period when they are separated. Rather, the cases draw the distinction between the periods before and after the imposition of a court-imposed support obligation. Potter, supra, 169 N.J.Super. at 143-44, 148-49, 404 A.2d 352; Sheren, supra, 322 N.J.Super. at 342, 344, 731 A.2d 52; Diehl, supra, 389 N.J.Super. at 451, 913 A.2d 803. Indeed, Diehl strongly drew the line at the imposition of the court-ordered support obligation, concluding that "a credit for weeks during which plaintiff had no court-ordered support obligation is not equitable." 389 N.J.Super. at 447, 450-51, 913 A.2d 803.
As set forth above, the line drawn in Diehl has sound reasoning behind it. In the time before child support is ordered, both married parents, whether they are separated or not, are under a moral obligation to support their children, which as of yet has neither been quantified nor divided between them by a court, from their finances which also have not been divided by a court. As set forth above, this makes the amounts of their support for their children, and the allocation of later lump sum benefits between them, the subject of conjecture or piecemeal proof.
Second, and again more fundamentally, the lump sum benefits from this period, though ultimately paid to a custodial parent, "belong to the child" and are "intended to meet current needs" of the children. Id. at 449, 913 A.2d 803. Indeed, Sheren denied the disabled non-custodial parent the amount by which the lump sum benefits exceeded court-ordered child support for a past period because "[t]hat amount belongs to his dependent children," and giving the excess to the non-custodial parent "would frustrate the primary purpose of social security disability payments for dependent children, which is to meet the `current needs of the dependents.'" 322 N.J.Super. at 344, 731 A.2d 52 (quoting Potts v. Potts, 240 N.W.2d 680, 682 (Iowa 1976)). Under this guiding rationale from *1269 Sheren and Diehl, the lump sum benefits should go to plaintiff as the current custodial parent. As it is no longer possible to use the lump sum benefits to improve the children's standard of living during the long-past period of separation, the benefits can only be used to meet the children's needs during the present, and the custodial parent is in a better position to do so.
Similarly, defendant is not entitled to a credit merely because she was the parent whose injury ultimately led to the lump sum derivative disability benefits. Both Diehl and Sheren gave to the uninjured parent the lump sum benefits for the period prior to the court-ordered child support.
This court acknowledges that if the SSA had had the ability to pay the derivative SSD benefits instantaneously during this period, the injured custodial parent would have received the funds and could have used the funds to benefit the children when they were primarily in her care. This court also recognizes that there is some equity in defendant's argument that she is entitled to a credit because she was effectively, if not by court decree, the residential parent during the period between separation and the effective date of child support, and therefore may have paid more of the children's expenses. Indeed, those equities were appealing on first glance. On further consideration, however, this court concludes that defendant's argument flies in the face of the line drawn by the cases, particularly Diehl, and the equities concerning what ultimately is the children's money. Her argument assumes away the difficulties of calculating the parties' relative support of the children during this perioda calculation that neither Sheren nor Diehl attempted regarding parents on the verge of divorce, who similarly may not be contributing equally to the support of the children. Most fundamentally, defendant's argument ignores that the lump sum benefits are not the parents' property to be divided between them, but "belong to the child" and are "intended to meet current needs" of the children. Diehl, supra, 389 N.J.Super. at 449, 913 A.2d 803. The awarding to defendant of the lump sum benefits for the period of separation can only remove those lump sum payments from the hands of the current custodial parent who has both the responsibility and better opportunity to use them to meet the children's current needs. The equities in rewarding defendant, as the residential parent during the period of separation, are simply outweighed by the equities of putting the money with the current custodial parent.
Indeed, if taken to its logical extreme, defendant's argument could deprive the children of any use of lump sum benefits. Defendant argues that, because she was the principal residential parent during the period of separation, she deserves 100% of the lump sum benefits for that period as repayment for that earlier period, even though defendant as the now non-custodial parent has only 14.25% of the current overnight parenting time. A former parent of primary residence could make the same 100% repayment argument even if he had none of the current parenting time. In that scenario, the lump sum benefits for the period of separation would never be used to meet the past or current needs of the children, but would benefit only the former residential parent. This would be wholly contrary to "the primary purpose of social security disability payments which is to meet the `current needs of the dependents.'" Sheren, supra, 322 N.J.Super. at 344, 731 A.2d 52.
Thus, applying the rationales underlying the lump sum cases, and considering the balance of the equities, the derivative SSD payments paid for this second period properly belong to plaintiff as the custodial *1270 parent when the lump sum benefits were paid.
According to the accounting from the SSA, the derivative benefits paid during this second period, after November 2007 and up to April 1, 2008, are $1,135 per child. Thus, plaintiff properly retains a total of $3,405 for the three children for this second period.

(3) Plaintiff Paying Child SupportApril 1, 2008 through June 23, 2009
The third period covered by the lump sum derivative payment runs from the April 1, 2008, effective date when plaintiffs child support commenced, until its termination, effective June 23, 2009, because plaintiff had become the custodial parent. During this period, according to an audit by Probation, plaintiff paid $18,000 in child support. This court will consider only $17,250 as child support paid by plaintiff, because the court's February 19, 2010 order ruled that the remaining $750 was an overpayment and included it as arrears for defendant to repay when defendant's child support obligation was established. According to the accounting from the SSA, the derivative benefits paid in this third period (including the first 23 days of June 2009) are $2,934.77 per child, or a total of $8,804.31 for the three children.
If the SSA had been able to commence the children's monthly derivative disability payments simultaneously with defendant's injury, plaintiff would have been required to pay a lesser amount of child support during this period under the Child Support Guidelines' calculations, absent a deviation, because defendant was the disabled parent. Pressler & Verniero, supra, at Appendix IXA paragraph 10(c). Under the lump sum cases, a disabled non-custodial parent would likely have received a credit, based on the lump sum derivative benefits, against his child support obligation, whether he was unable to pay them, as in Potter and Sheren, or somehow paid them, as in Diehl.
The same should be true in the instant case, despite the fact that here, unlike the lump sum cases, plaintiff is not the disabled parent. Plaintiff was required to pay a higher amount under the Child Support Guidelines calculations than if the lump sum benefits had been paid on a monthly basis. Nor would there be an obvious case for a deviation, as plaintiff paid in full a child support obligation more than twice the amount of lump sum benefits subsequently received for this period.
Unlike the non-custodial parent in the lump sum cases, plaintiff is not the disabled parent. Nonetheless, awarding credit to plaintiff serves the same goals as in the lump sum casesto credit a non-custodial parent who was compelled by a "court-ordered support obligation" to pay more child support than would have been required had the derivative benefits been known and paid monthly during this period.
The fact that plaintiff is now the custodial parent does not disqualify him from receiving such a credit. To the contrary, it removes one of the equities against giving such a credit, because it gives the funds to the current custodial parent, who is in a better position to use the funds to meet the children's "current needs." Diehl, supra, 389 N.J.Super. at 449, 913 A.2d 803.
Indeed, in their supplemental submissions, both parties agreed that plaintiff deserves a credit from the lump sum benefit against the child support he paid during this third period. The parties differ in their calculations of the amount of credit. Defendant attempts to calculate what child support would have been under the Child Support Guidelines had the SSA been able to begin paying monthly benefits simultaneously with her injury, a post-hoc calculation *1271 that depends on the often difficult recreating of the incomes used in the original calculation.
It is clear that such post-hoc use of the guidelines is not required. The Appellate Division ruled in Sheren that a parent's "motion for a credit against his child support obligations for the retroactive lump sum social security benefits paid to his dependent children" does not implicate the guidelines, because "the guidelines only apply in `establishing] or modifying] child support.'" 322 N.J.Super. at 340, 731 A.2d 52 (quoting Rule 5:6A). Therefore, the Appellate Division ruled, "compliance with the Child Support Guidelines was not required." Id. at 341, 731 A.2d 52.
This court will instead follow Potter, Sheren, and Diehl. Under those cases, the amount of that credit would be limited to the lesser of the child support paid ($17,250) and the amount of the SSD benefits ($8,804.31) during this period. This court awards plaintiff a credit of $8,804.31.[1]

(4) No Child Supportafter June 23, 2009 but before January 14, 2010
The fourth period covered by the lump sum derivative payment runs after the June 23, 2009, effective date of the termination of plaintiffs child support, but before the January 14, 2010, effective date of defendant's child support obligation. Both parties agree that plaintiff, the custodial parent during this period, should retain the portion of the lump sum payment covering this period.
Indeed, this period is indistinguishable from the initial period addressed in Diehl. Like the plaintiff in Diehl, defendant, though injured, was the non-custodial parent, and "had no court-ordered child support obligation" during this period. 389 N.J.Super. at 450, 913 A.2d 803. Accordingly, defendant "is not entitled to a credit for SSD benefits paid for" in this period. Id. at 451, 913 A.2d 803. The lump sum benefits for this period properly belong to plaintiff as the custodial parent, both during this period and currently, to spend on the present needs of the children.
According to the accounting from the SSA, the derivative benefits paid during this fourth period, including the last seven days of June 2009, and the first thirteen days of January 2010, are $1,204.13 per child. Thus, plaintiff properly retains a total of $3,612.39 for the three children for this fourth period.

(5) Defendant's Child SupportJanuary 14, 2010 to September 30, 2011 End of Lump Sum
The fifth period runs from the January 14, 2010, effective date of defendant's child support obligation until the September 30, 2010 end of the period covered by the lump sum derivative payment. This period is governed directly by the holdings of Potter, Sheren, and Diehl. Defendant is like the injured non-custodial parents in those cases, in that during this period, defendant "was unable to work and hence the Social Security payment here *1272 must be regarded as fully substitutionary for [her] lost earning power." Potter, supra, 169 N.J.Super. at 149, 404 A.2d 352. Further, "[i]t does not appear that [Defendant] had any other income sufficient to meet the support obligation or that [her] failure to provide support was in any way willful or contumacious." Ibid. Accordingly, "the receipt by [Plaintiff] of the lump sum payment is equitably required to be deemed in full satisfaction of any outstanding obligation of plaintiff which had accrued as of that time." Ibid.
Under Potter and Sheren, if an obligor was unable to pay her child support obligation and had arrears, she would be entitled to a credit under Potter and Sheren of the lesser of the amount of the derivative lump sum benefits or the amount of the arrears. Potter, supra, 169 N.J.Super. at 147-49, 404 A.2d at 356-57; Sheren, supra, 322 N.J.Super. at 342-44, 731 A.2d 52. Under Diehl, if an obligor somehow was able to pay her child support despite her injury, "[a]bsent a special showing of inequity under the circumstances, an obligor should be credited with a retroactive payment of SSD benefits that do not exceed the obligor's support obligation during the benefit period." 389 N.J.Super. at 450-51, 913 A.2d 803. Such a credit is equitable here.
Furthermore, it is appropriate to give defendant a credit because her child support obligation was not set based on her disability or based on the derivative SSD payments. In Diehl, the Appellate Division refused to award a credit for the period "when child support is reduced to a level appropriate in light of the obligor's diminished earning capacity," and "when SSD benefits paid to the child are considered in calculating child support." 389 N.J.Super. at 451-53, 913 A.2d 803. Here, by contrast, defendant's child support level was set based on the assumption that she could work a full-time minimum-wage job, when in fact her injury was disabling. Further, that level was set when her SSD benefits, and most importantly, the children's SSD benefits, had not been determined or awarded.
During this fifth period, according to an audit by Probation, defendant actually paid $250 in child support, leaving a balance of $1,042 arrears for this period, as well as the $750 arrears added to reflect plaintiffs $750 overpayment when he was paying child support. Thus, the total amount of defendant's child support obligation, both paid and unpaid during this fifth period, was $2,042.
According to the accounting from the SSA, the derivative benefits paid in a lump sum for this fifth period (including the last seventeen days of January 2010 through September 2010) are $1,553.10 per child, or a total of $4,659.30 for the three children. Under Potter, Sheren, and Diehl, and under the equities, defendant is entitled to a credit for the lesser of the $2,042 child support obligation and the $4,659.30 lump sum benefits paid for in this period. This court thus awards defendant a credit of $2,042.

(6) October 1, 2010 to end of Defendant's Child Support
The five periods discussed above cover the entirety of the lump sum payments, and thus resolve the principal issue. They do not, however, cover the remainder of defendant's child support to plaintiff. From the September 30, 2010, end of the period covered by the lump sum payments, until this court's March 25, 2011 order terminating child support, defendant paid $1,894.40 in child support. This paid in full both the $1,042 in arrears noted above, and the $850 child support obligation that accrued during this sixth period. It left her with arrears of $747.60, almost matching the $750 arrears initially added to reflect *1273 plaintiffs overpayment. This court's March 25, 2011, order nullified defendant's remaining $747.60 arrears.
Thus, the $2,042 credit awarded above represents almost all of the $2,144.40 defendant ultimately paid in child support. Because this court's March 25, 2011, order nullified the remaining arrears, a credit against non-existent arrears does defendant no good, and ignores that she ultimately paid the $2,042. Accordingly, it is appropriate that plaintiff should repay the $2,042 to defendant.
That repayment leaves defendant having made a net child support payment of $102.40. That payment, and the monthly obligation paid, both arose after the period covered by the lump sum payment. Under Sheren, a party is "entitled to a credit only against the arrearages accrued during the period of his disability [covered by his lump sum benefits], not against his future child support obligations." 322 N.J.Super. at 341, 731 A.2d 52. Defendant cannot therefore use the amount of the lump sum payment remaining after the $2,042 credit to regain the $102.40 in "future child support" that she paid after the period covered by the lump sum payment. Id. at 341-44, 731 A.2d 52; accord Diehl, supra, 389 N.J.Super. at 450, 913 A.2d 803.
However, defendant's notice of motion, sent February 1, 2011, also asked that her child support obligation be recalculated based on her disability and the children's receipt of ongoing, monthly disability benefits. This court's March 25, 2011, order determined that, based on that recalculation, defendant's child support obligation should cease. This court's order did not specify an effective date for the termination of defendant's child support obligation.
Under N.J.S.A. 2A:17-56.23(a), defendant can receive a modification back to the February 1, 2011, date when she mailed her notice of motion. Based on the statute, and the equities of this case, this court believes that it should supplement its March 25, 2011, order by ordering that February 1, 2011, is the effective date of the termination of defendant's child support obligation.
As set forth above, defendant has paid a net $102.40 in child support. From February 1, 2011, until the cessation of child support on March 25, 2011, defendant paid $190.70 in child support, a sum sufficient to justify repaying the $102.40. Accordingly, this court orders that plaintiff also repay defendant the remaining $102.40 she paid in child support.

IV. CONCLUSION
Thus, under the equities of this case, and following the guidance provided by the holdings in Potter, Sheren, and Diehl, this court rules as follows.
Defendant is entitled to a total of $2,042 of the lump sum retroactive derivative SSD benefits ultimately paid to plaintiff for the three children during the fifth period. Defendant is entitled to an additional $102.40 representing her net payments of child support after the mailing date of her motion that led to the termination of her child support obligation. Accordingly, plaintiff shall repay to defendant a total of $2,144.40, which represents the entire amount which defendant actually paid in child support.
Plaintiff argued that he had already spent at least $26,500 of the lump sum benefits to buy a bigger house for himself and the children, and to purchase gifts and other items for the children. Plaintiff did so at his peril, however, as it was clear from Potter, Sheren, and Diehl that defendant could seek credit for some or all of the child support that she paid during the final period covered by the lump sum benefits. Furthermore, plaintiff has not accounted for the remaining $4,565 from the *1274 lump sum benefits. If that remaining money is readily available to plaintiff, he has no reason not to make this $2,144.40 repayment promptly. In case that money is not available to plaintiff, this court gives plaintiff sixty days to make this payment, because that gives him time to save up, or to obtain financing for, the amount needed for repayment.
Under the case law, and under the equities of this case, plaintiff is entitled to retain the remainder of the lump sum retroactive derivative SSD benefits paid to plaintiff for the three children.
NOTES
[1] Because the lump sum benefits for this third period were less than the child support paid by plaintiff, this Court does not need to reach the more difficult issue of who would be entitled to the excess if the lump sum benefits had exceeded the child support plaintiff paid during this period. Sheren, supra, 322 N.J.Super. at 344, 731 A.2d 52 ruled that a non-custodial parent "is not entitled to a retroactive credit for that part of the lump sum social security disability benefit paid to his dependent children which exceeds the amount [of child support payments] attributable to the period of his disability," and that the custodial parent should get the excess. Because in Sheren the custodial parent never changed, Sheren did not need to distinguish whether the excess should go to the current custodial parent, or the custodial parent during the period of the excess.