**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2483-16T2

M.B.,

     Plaintiff-Appellant,

v.

D.B.,

     Defendant-Respondent.

_____

Argued September 18, 2018 – Decided October 5, 2018

Before Judges Hoffman, Suter and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0252-09.

Howard L. Felsenfeld argued the cause for appellant (Felsenfeld & Clopton, PC, attorneys; Howard L. Felsenfeld, on the briefs).

Kimberly A. Engan argued the cause for respondent (Destribats Campbell, LLC, attorneys; Kimberly A. Engan, of counsel and on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff appeals from a Family Part order requiring her to reimburse defendant for Social Security Disability (SSD) payments she received on behalf of the parties' children while defendant had custody of the children. Plaintiff also appeals from the denial of her applications seeking an increase in alimony and an award of counsel fees. We affirm in part, and vacate and remand in part.

I.

The parties married in 1990. There were two children born of the marriage; a son born in 1997, and a daughter born in 1999. The parties divorced in October 2010. Their dual Final Judgment of Divorce (FJOD) set forth the terms of the parties' settlement agreement resolving all issues regarding the dissolution of their marriage.

The FJOD provided for joint legal custody of the children and designated plaintiff as the parent of primary residence. It also called for alimony payments from defendant to plaintiff. The amount of alimony began at $30,000 per year, stepping down to zero after 2025. The FJOD also required defendant to pay plaintiff thirty-three percent of all bonuses and twenty-five percent of all stock received from his employer. While the bonus and stock provisions appear in the "Alimony" section of the FJOD, the judgment describes the payments as "non-

A-2483-16T2

taxable unallocated support." The FJOD further limits the right of each party to seek modification of alimony – defendant may only seek modification if plaintiff receives "income substantially higher than the $50,000" salary imputed to her or if defendant earns "substantially less" than $143,000, while plaintiff may only seek modification if defendant receives "substantially more bonus and stock than he has [received] historically." The FJOD also required defendant to pay child support of $154 per week.

Plaintiff's Psychiatric and Drug Abuse Issues

In 2010, plaintiff admitted to alcohol and drug abuse; in July 2011, she entered a treatment facility and relinquished custody of the children to defendant. In September 2011, the court terminated defendant's child support obligation and reduced by half his obligation to pay plaintiff a portion of his bonuses and stock awards. In December 2011, the court ordered plaintiff to pay defendant $246 per week in child support. Plaintiff claims her condition prevented her from participating in the 2011 court proceedings.

According to plaintiff, from 2011 to 2013, she was "just a mess," and rarely saw the children. In August 2013, plaintiff entered a rehabilitation facility, which released her in October 2013; she then entered a group home for recovering addicts. Plaintiff began to see the children again in July 2014.

3 <span>A-2483-16T2</span>

Plaintiff claims she has not used any alcohol or illegal drugs since leaving the treatment facility in October 2013.

The Parties' Earnings

In February 2010, defendant's case information statement listed his 2009 base salary as approximately $140,000 and total income as approximately $180,000. In 2011, defendant's base salary approximated $150,000 and total income approximated $225,000. In 2014, defendant's base salary increased to approximately $165,000 and total income increased to approximately $280,000. Defendant's bonus and stock income in 2009 approximated $40,000, increasing to approximately $115,000 by 2015.

Plaintiff stopped working in 2007, and only worked intermittently for a few months at a time through 2014. In June 2014, plaintiff's psychiatrist found plaintiff "in full remission" and "motivat[ed] to apply for employment." Plaintiff worked as an unpaid intern at an attorney's office for six months, then began working part-time at ten dollars per hour in May 2016.

Social Security Payments

In 2011, plaintiff began receiving SSD benefits for herself and the children. Plaintiff's 2013 social security statement for her own benefit shows a net benefit paid of approximately $27,500. In 2016, plaintiff's SSD benefits

4

approximated $29,000 per year, and she acknowledged she can earn an additional $10,000 to $12,000 per year without reducing her SSD benefits.

In 2011, plaintiff also received a lump sum SSD payment of $57,432 for the children from 2007 through 2010. In addition, plaintiff received SSD payments for the children of approximately $15,000 per year from 2012 through 2014.

Plaintiff retained the SSD payments she received for the children while defendant had custody, reasoning she was the one disabled and she was paying child support. Plaintiff claimed the Social Security Administration advised her that the children's benefits "were for her to use for the children," and "there was no indication that the monies were to be turned over to the defendant." Plaintiff testified, "I have absolutely no idea what I did with any money . . . . I blew it." Plaintiff began paying child support in June 2012; however, she received more in SSD payments (approximately $320 per week in 2012 and $280 per week in 2013 and 2014) than she paid out in child support ($246 per week). The SSD payments for the parties' son ended in July 2015, when he turned eighteen. Defendant began directly receiving the SSD payments for the parties' daughter in March 2016. The daughter turned eighteen in September 2017, after the filing

5

of this appeal, and presumably her SSD payments ended then. Defendant plans to use any award of SSD benefits to pay for the children's college education.

In May 2016, the trial court held a three-day hearing, where both parties testified. The court then issued an order requiring plaintiff to pay defendant $74,584 for the children's SSD payments she received and retained. The court also denied plaintiff's request for alimony modification, and declined to award either party counsel fees. The order further allowed defendant to deduct the repayment of the $74,584 from his bonus and stock payments to plaintiff over the subsequent nine years. This appeal followed.

II.

"The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Because a trial court hears the case, sees and observes the witnesses, [and] hears them testify, it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Id. at 412 (alteration in original) (citations omitted). Consequently, appellate courts do not disturb the "factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent,

relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms, 65 N.J. at 484). However, "we are not bound by '[a] trial court's interpretation of the law' and do not defer to legal consequences drawn from established facts." Jacoby v. Jacoby, 427 N.J. Super. 109, 116-17 (App. Div. 2012) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Modification of an alimony award based on a claim of changed circumstances is a matter within the sound discretion of the Family Part judge. Innes v. Innes, 117 N.J. 496, 504 (1990). A motion for modification of alimony "rests upon its own particular footing and the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006) (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)).

Courts have the power to enforce support agreements to the extent that such agreements are fair and equitable. Lepis v. Lepis, 83 N.J. 139, 148-49 (1980). Courts also have the power to modify such agreements upon a showing of "changed circumstances." Id. at 146 (citations omitted). However, the court must give due weight to the fact that there is a strong public policy "favoring the use of consensual agreements to resolve marital controversies." Konzelman

A-2483-16T2

v. Konzelman, 158 N.J. 185, 193 (1999). "[F]air and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Id. at 193-94 (quoting Smith v. Smith, 72 N.J. 350, 358 (1977)).

A.

Plaintiff argues the trial court erred as a matter of law when it ordered her to pay defendant $76,834 for the children's past SSD benefits she received. We addressed the impact of SSD benefits on a disabled parent's child support obligation in Herd v. Herd, 307 N.J. Super. 501 (App. Div. 1998). In that case, the father requested modification of his child support after the mother began receiving SSD benefits on behalf of the children. Id. at 502. We held children's SSD benefits based on the non-custodial parent's disability should go "to the custodial parent in lieu of child support." Id. at 505 (citation omitted). However, if the non-custodial parent's child support obligation is greater than the SSD benefits received, then the non-custodial parent must pay the custodial parent the remaining amount due. Ibid.

In Diehl v. Diehl, 389 N.J. Super. 443 (App. Div. 2006), we specifically addressed the situation where a parent received a lump sum SSD payment for a prior period. In Diehl, the child received a lump sum SSD payment based upon her father's disability after she turned eighteen. Id. at 448. The payment covered

the time between the father's disability and the child turning eighteen. Ibid. We held, "Although SSD benefits are paid on account of the parent's efforts and substitute for support the parent cannot earn, the benefits belong to the child." Id. at 449 (citing Sheren v. Moseley, 322 N.J. Super. 338, 343 (App. Div. 1999)).

The trial court here carefully examined the dates covered by the lump sum payment and analyzed each period of custody separately, following the reasoning and methodology that the Chancery Division applied in Labrosciano v. Labrosciano, 426 N.J. Super. 252 (Ch. Div. 2011). For the period before the parties divorced, the trial court awarded defendant the entire lump sum. We note that during this period, defendant's income constituted the sole support for the family. For the period when plaintiff still had custody of the children, the court did not award defendant any payment. Next, for the period when defendant had custody of the children and plaintiff paid no child support, the court awarded defendant the full payments. Finally, for the period when defendant had custody and plaintiff paid child support, the court awarded defendant the payments; however, the court offset the amount owed to defendant by the child support plaintiff paid. We discern no basis to disturb the trial court's findings or conclusions regarding the children's SSD benefits. The record

clearly shows plaintiff received and retained benefits that should have been paid to defendant.

B.

We next address plaintiff's argument that the trial court erred as a matter of law when it found no substantial change in circumstances to warrant a modification of alimony. The court determined plaintiff's current income consisted of $12,000 per year in imputed income, $30,000 per year in SSD benefits, and $16,000 per year in alimony, for a total of $58,000. The court found that was not a substantial change from the previous imputation of $50,000 per year.

The court found defendant's income had increased, and read the FJOD as allowing a modification only for a decrease in defendant's income, not an increase. Therefore, the court found no "change in circumstances for alimony purposes," and emphasized that "the parties freely negotiated" the FJOD. The court further noted that plaintiff's current situation may represent "an improvement over 2010," when she executed the FJOD, because she now receives SSD benefits and her mental health has stabilized. Therefore the court denied plaintiff's application for an upward modification of alimony.

10

Significantly, the trial court's analysis focused only on defendant's base salary; inexplicably, the court failed to address the significant increase in defendant's bonus and stock income. The FJOD calls for a modification of alimony "in the event defendant's income structure changes so that he is receiving substantially less than $143,000.00 salary or substantially more bonus and stock than he has historically [received] . . . ." Defendant's base salary increased from approximately $140,000 in 2009 to $165,000 in 2014. Defendant's total income increased from approximately $180,000 in 2009 to approximately $280,000 in 2014. Therefore, his bonus and stock income increased from approximately $40,000, in 2009, to approximately $115,000 in 2014. Because the trial court failed to consider the nearly three-fold increase in defendant's bonus and stock income, we remand for the court to determine whether defendant's bonus and stock income increased sufficiently to warrant an increase in alimony, and if so, the amount of increase warranted.

C.

Finally, plaintiff argues the trial court erred in failing to award her counsel fees "given the clear disparity" in the parties' incomes, and in failing "to properly consider [her] application." Rule 4:42-9(a)(1) authorizes an award of counsel fees in a Family Part action. The award of fees is discretionary. J.E.V. v. K.V.,

426 N.J. Super. 475, 492 (App. Div. 2012). On appeal, we will not reverse a decision regarding counsel fees absent a clear abuse of discretion. Ibid. (citation omitted).

Rule 5:3-5(c) provides the following list of factors for consideration in the award of counsel fees:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

Here, the trial court declined to award either party counsel fees. The court cited the above factors and found, "while both parties allege the other acted unreasonably, on balance when considering all the factors, . . . awarding fees in this case would not be equitable."

Plaintiff asserts the trial judge failed to articulate adequate findings when he rejected her request for counsel fees. We agree. The trial court must clearly state "its factual findings and correlate them with the relevant legal conclusions." Curtis v. Finneran, 83 N.J. 563, 570 (1980); see R. 1:7-4(a).

A-2483-16T2

Without such findings, it is impossible for us to decide whether the record supports the judge's determination. See Mol v. Mol, 147 N.J. Super. 5, 9 (App. Div. 1977). A recitation of the factors for awarding counsel fees is insufficient. Grayer v. Grayer, 147 N.J. Super. 513, 516 (App. Div. 1977).

While the trial judge listed the factors that he considered in denying counsel fees, he did not set forth any specific findings as to any of the factors, or how they supported a denial of counsel fees in this case. We are therefore constrained to remand this issue to the judge to set forth his factual findings and correlate them with the relevant law. Since we are remanding for the court to address plaintiff's application for an increase in alimony, the judge should address the counsel fee issue anew, after first deciding the alimony issue.

Affirmed in part, vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2483-16T2