801 A.2d 436 (2002)
353 N.J. Super. 94
David J. TASH and Gail Tash, Plaintiffs-Respondents,
v.
Christopher TASH, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 7, 2002.
Decided July 8, 2002.
*437 Paul R. Edinger, West Long Branch, attorney for appellant.
Nemergut & Duff, Woodbridge, attorneys for respondents (Howard Duff, of counsel and on the brief).
Before Judges EICHEN, COLLESTER and PARKER.
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant Christopher Tash appeals from an order adjudicating him in violation of litigant's rights for failing to provide wage documentation to plaintiffs' counsel; requiring him to pay a child support obligation of $164 per week for two children; fixing arrears in child support in the amount of $10,000, payable at $36 per week; affixing a wage garnishment for $164 per week; and payment of counsel fees for plaintiffs in the sum of $700.
Plaintiffs, David J. Tash and Gail Tash, are the natural father and step-mother of defendant, Christopher Tash. Living with plaintiffs are three children: Desiree Tash, born September 9, 1986, Christopher Tash, Jr., born June 26, 1989, and Alexandria Haley, born August 12, 1992. The defendant, Christopher Tash, is the father of Christopher, Jr. and Desiree Tash. The father of the youngest child, Alexandria Haley, has never been identified. The children's mother, Desiree Haley, was murdered in September 1994. Defendant was incarcerated at the time in a New Jersey prison where he remained until his release in August 1996. The plaintiffs took physical custody of all three children after Desiree Haley's death. As a result plaintiffs receive the social security death benefits for the children on account of the mother's death in the amount of $272 per month per child.
Defendant filed a complaint for custody of his two children in late 1999. The case was referred for mandatory mediation on issues of custody, parenting, and child support. After mediation was unsuccessful, plaintiff Gail Tash filed an application in the Monmouth County Family Intake office to terminate visitation and to compel defendant to pay child support.
A hearing was conducted on December 23, 1999, as a result of which the hearing judge issued a temporary order for the children to remain in plaintiffs' custody and for defendant to have visitation with his son and, to a limited extent, his daughter. The order also directed a custody *438 investigation by the Freehold Pathology Group who were to submit a custody and visitation assessment to the court. A plenary hearing was scheduled.
The hearing was not held until December 1, 2000, almost a year following the entry of the temporary order. After the hearing began, a settlement was reached as to all custody and parenting issues, providing that custody was to remain with the plaintiffs and affording visitation for defendant. There was no resolution of child support.
Prior to the hearing, plaintiffs' attorney served a notice for defendant to produce wage documentation. However, the documents were not produced, and the hearing judge orally directed defendant to submit them to plaintiffs' attorney within ten days. When the documents were again not produced, plaintiffs filed a motion to adjudicate defendant in violation of litigant's rights and for the following: (1) production of a case information statement including a copy of defendant's 1999 tax return, W-2 forms and certification as to his 2000 income with pay stubs; (2) fixing defendant's child support obligation "effective November 29, 1999, the date of which plaintiffs' applied for support"; (3) settling resulting arrears; (4) reducing the arrears to judgment; and (5) counsel fees for the application. In response defendant produced two pay stubs for the year 2000, unemployment claim forms for one week in 2000 and one week in 2001 and W-2 forms for the years 1998, 1999 and 2000.
Defendant stated he worked as a roofer and was paid union wages of $27.22 per hour. According to the report of the psychologist who interviewed him, defendant claimed he worked forty to sixty hours per week depending on the project, which would translate to an annual gross income of about $49,000. On the return date of plaintiff's motion defendant said that work was available to him only part of the year and that his gross wages for the year 2000 was only $20,299.36.
The hearing judge derived a support figure for each child by first calculating the child support guidelines at defendant's stated income of $20,000, which resulted in $111 per week. He then imputed income to the defendant in the amount of $45,000, based on wages of $27.22 per hour at forty hours per week for forty-five weeks. He applied the child support guidelines to the $45,000 figure, which yielded $216 per week. Adding the two child support figures together, one based on defendant's claim of gross income and the other on the imputed income, the judge then divided the sum in half, resulting in $164 per week.
The motion judge admitted that the child support figure was a compromise due to the limited information produced by the defendant despite several requests for his income verification, tax returns and a case information statement. Defendant correctly contends that the child support figure is inexact, but he must bear the blame. Both the guidelines and the case law of this State explicitly permit the imputation of income where earnings cannot be determined. Pressler, Current N.J. Court Rules, Appendix IX-A, "Considerations In Use Of Child Support Guidelines," subpart 12 (2002); Bencivenga v. Bencivenga, 254 N.J.Super. 328, 331-32, 603 A.2d 531 (App.Div.1992); Mowery v. Mowery, 38 N.J.Super. 92, 102, 118 A.2d 49 (App.Div.1955), certif. denied, 20 N.J. 307, 119 A.2d 791 (1956). The failure of the defendant to provide adequate financial information placed the hearing judge in a position where he had to examine the defendant's health and work abilities and realistically impute income. The judge made a conscientious effort to fairly apply the child support guidelines in a manner reflective not only of defendant's stated *439 income but also income properly imputed to him. We find no abuse of discretion in the manner in which the child support was calculated or in the resulting support figure. See McDermott v. McDermott, 120 N.J.Super. 42, 44, 293 A.2d 232 (Ch. 1972); Weitzman v. Weitzman, 228 N.J.Super. 346, 358, 549 A.2d 888 (App. Div.1988), certif. denied, 114 N.J. 505, 555 A.2d 623 (1989).
Defendant next argues that the hearing judge abused his discretion by giving retroactive effect to his determination of child support. He argues that when the custody order was entered he was not provided with notice as to plaintiffs' child support complaint and therefore there should be no retroactivity. However, the record reflects that Gail Tash applied to the Monmouth County Family Intake Service on November 29, 1999. It strains credulity for the defendant to say he had no knowledge of the application for support when he was obviously aware that he had a responsibility to support his children, at the very least as of the date of his custody complaint. We find that under these circumstances there was no abuse of discretion in granting retroactive effect to a child support order.
However, we are constrained to reverse the order of child support due to the failure of the hearing judge to consider the earnings of plaintiffs as well as his exclusion of social security death benefits from consideration under the child support guidelines.
The child support guidelines basic child support amounts set forth in Appendix IX-F represent estimates of parental expenditures on children in intact households and are the marginal (extra) cost of raising a child at various total-income levels. See Pressler, supra, Appendix IX-A, ¶¶ 5-7. Accordingly, total household net income must be considered, regardless of a duty to support[1] so that actual cost of raising the child can be best estimated. The guidelines are predicated on an "income share basis" and assume a household overhead component which may be of significance if others pay all or part of the household expenses where a child resides.
As stated in the comments to the guidelines, "[a]t the foundation of the child support guidelines are estimates of what parents in intact families spend on their children." Pressler, supra, Appendix IX -A at pp. 2262 That amount, termed the Basic Child Support Obligation, is the presumed financial need for the child. Accordingly, the economic underpinning of the guidelines support an approach to consider the total income of plaintiffs and defendant and then derive the obligation of the father as a percentage of the whole. Put another way, the hearing judge must determine the standard of well-being and marginal cost for the children in the household of the grandparents and the extent to which the father can fulfill his obligation within the confines of his income as determined by the court.
Next to be addressed is the inclusion or exclusion of the social security death benefits paid on behalf of Desiree Haley for the two children in issue. With regard to government benefits paid the guidelines state the following:
In some cases government benefits may be received by or for a child based on a parent's earning record, disability or retirement (e.g., Black Lung, Veteran's *440 Disability, Social Security). Such payments are meant to replace the lost earnings of the parent and are paid in addition to the worker's or member's benefits (i.e., payment to family members do not reduce the member's benefits,)... If non-means tested benefits are paid to or for the dependent child for whom support is being determined, the benefits must be deducted from the basic support obligation. The deduction is provided because the receipt of such benefits reduces the parents' contributions toward the child's living expenses (i.e., the marginal cost of the child). If the benefits received by the child are greater than the total support obligation (i.e., the amount of the obligation after deducting the benefits is zero), no support award should be ordered while the child is receiving the benefits. The benefits will continue to be paid by the government agency to the custodial parent in lieu of child support. If the total obligation is greater than the benefits received by the child, the non-custodial parent's income share of the residual amount (after deducting the benefits) is the support award to be paid to the custodial parent. Government benefits paid to or for a child that reduce benefits paid to a non-custodial parent (an apportionment) should not be deducted from the basic child support order (i.e., the apportionment represents a payment toward the support order similar to a garnishment).
[Pressler, supra, Appendix IX-A, ¶¶10c (citations omitted).]
The instructions for deducting government benefits paid for on behalf of the child are stated on Line 12 of the instructions for deducting government benefits paid to or for the child on the Shared Parents Worksheet.
If a child is receiving government benefits based on either parent's earning record, disability, or retirement, the amount of those benefits must be deducted from the total support award (regardless of the effect of the child's benefit payments on benefits paid to the parent). Such benefits include, but are not limited to: Social Security Retirement or Disability, Black Lung, and Veteran's Administration benefits. Also included are non-means-tested government benefits meant to offset the cost of the child such as adoption subsidies (N.J.A.C. 10:121-2). SSI, public assistance (TANF), and other means-tested benefits are not government benefits based on a parent's earnings record, disability or retirement and should not be included on Line 12. (Emphasis supplied.)
[Pressler, supra, Appendix IX-B, "Sole Parenting Worksheet-Line Instructions."]
Prior to the guidelines we held that Social Security benefits paid to children on behalf of a non-custodial parent's ongoing disability satisfied his support obligation:
The rationale underlying this view is that such payments are not gratuities but were earned by the wage earner during his period of employment and that they constitute in effect insurance payments substituting for lost earning power.

[Potter v. Potter, 169 N.J.Super. 140, 148, 404 A.2d 352 (App.Div.1979).]
Subsequently, we held in De La Ossa v. De La Ossa, 291 N.J.Super. 557, 677 A.2d 1157 (App.Div.1996) that a disabled father was not entitled to a credit for child support payments made to the mother under the then existing guidelines because the son was "not receiving an apportionment of his father's Social Security entitlement but is receiving a personal entitlement *441 which arises from his father's disability." Id. at 559, 677 A.2d 1157. Notably, we underscored that the limited contours of our holding did not foreclose the father from a recalculation of his support obligation:
The Guidelines are designed to designate an amount that "economic research has shown to be spent on children of intact families in a similar income situation," Appendix IX-E-D(1). That amountthe "Basic Child Support Obligation"constitutes the presumed financial need of the child. The child support obligation is then divided proportionately between the parents based upon their contribution to the family income. Guideline F provides that a direct apportionment of disability benefits from a non-custodial parent "should be deducted from the "Basic Child Support Obligation." The child support obligation worksheet also indicates that the "apportionments to the child" are to be deducted from the "Basic Child Support Amount" before the "Percentage Share of Income" is determined. See Appendix IX-D. Our decision here is without prejudice to defendant's right to move for a recalculation of his support obligation in accordance with the express language of Guideline F.

[Id. at 559-60, 677 A.2d 1157.]
Similarly, in Herd v. Herd, 307 N.J.Super. 501, 704 A.2d 1340 (App.Div.1998), we held that the trial judge should have considered Social Security disability payments received for the child's benefit not as a credit against support payable but as a factor in calculating the father's child support obligation. See also, Sheren v. Moseley, 322 N.J.Super. 338, 731 A.2d 52 (App. Div.1999).
In Pasternak v. Pasternak, 310 N.J.Super. 483, 708 A.2d 1235 (Ch.Div.1997), the Chancery judge considered the proper treatment within the guidelines of a Social Security death benefit paid on behalf of a natural father and its impact upon the obligation of the adoptive father. The judge held that the death benefit "must be deemed to reduce the marginal cost of the children, the basic child support obligation, and ultimately the percentage child support obligation of both parties." Id. at 489, 708 A.2d 1235.
We hold that the death benefits received by the children on behalf of their mother are non-means-tested government benefits designed to replace monies which would or could have been earned by the mother had she survived and would therefore have reduced the overall marginal cost of care for the children. Therefore, we remand to the trial judge for a reconsideration of defendant's child support.
The trial judge should consider the income of the defendant, proved or imputed, and the plaintiffs' income with applicable deductions including the third child in their custody. Using the Appendix IX-F figures, he should then obtain the estimated cost of raising the children. The Social Security death benefit is to be subtracted from this basic child support amount, and the percentage of the support obligation attributable to both parties based on their respective incomes is to be applied to ascertain the amount of defendant's child support obligation.
Reversed and remanded.
NOTES
[1] Plaintiffs do not contest a legal obligation as custodians of the children. See A.N. ex rel. S.N. v. S.M., 333 N.J.Super. 566, 572, 756 A.2d 625 (App.Div.), certif. denied, 166 N.J. 606, 767 A.2d 484 (2000); see also, Watkins v. Nelson, 163 N.J. 235, 253-54, 748 A. 2d 558 (2000); Savoie v. Savoie, 245 N.J.Super. 1, 4, 583 A.2d 762 (App.Div.1990).