953 A.2d 508 (2008)
402 N.J. Super. 205
Mary L. IBRAHIM, Plaintiff-Respondent,
v.
Reda M. AZIZ, Defendant-Appellant.
No. A-4447-05T2
Superior Court of New Jersey, Appellate Division.
Argued April 15, 2008.
Decided August 19, 2008.
*509 Reda M. Aziz, appellant pro se.
Vito Brunetti argued the cause for respondent (Northeast New Jersey Legal Services Corp., attorneys; Mr. Brunetti, of counsel and on the brief; Loren Youmans, on the brief).
Before Judges COBURN, FUENTES and CHAMBERS.
The opinion of the court was delivered by
CHAMBERS, J.A.D.
Defendant Reda M. Aziz appeals from the order of March 21, 2006, requiring that he pay plaintiff Mary L. Ibrahim $125 per week in child support plus $25 per week in arrears. Although defendant lives in Egypt and maintains that he earns only $86 per month there, the trial court imputed income of $680 per week to defendant based on the salary a store manager would earn in New Jersey as reported by the New Jersey Department of Labor. Defendant, however, is not employed in New Jersey, but rather resides and works in Egypt. Given the differences between wages in Egypt and wages in New Jersey, the trial court erred in imputing to defendant income that he could have earned in New Jersey. We reverse and remand the matter to the Family Part for further proceedings in accordance with this opinion.

I
The parties, both natives of Egypt, were married in Egypt in February 1996. They have one child born in 1997. Defendant was educated in Egypt and has the equivalent of an Associates Degree. He worked with his father in their gold business in Cairo. In 2000, the parties obtained visitor visas that allowed them to stay in the United States for six months. Upon application, their stay could be extended at six month intervals within the visas' five-year term. It appears from the record that these visas did not authorize the parties to work in the United States.
The parties first came to the United States to visit relatives in 2000, and then returned to Egypt. In May 2001, the parties came back to the United States with their child. At that time, plaintiff obtained *510 a job as a waitress,[1] and the family moved into an apartment. Plaintiff contended that defendant opened a retail store in Jersey City. Defendant denied that he did so. The trial court found that defendant managed a retail store for his relatives in New Jersey. The trial court could not determine whether defendant was paid for those services or whether defendant's relatives merely utilized his services in exchange for the housing, food, and gifts they provided to him and his family.
In January 2002, plaintiff filed a domestic violence application against defendant. The amended final restraining order dated January 17, 2002, directed defendant to pay child support in the amount of $175 per week. At the domestic violence hearing, defendant had agreed to pay this sum so long as he was in the United States; it was contemplated at the time of the domestic violence hearing that he would be leaving the country shortly. Since defendant represented that he was unemployed at the time, the record at the domestic violence hearing reflects that defendant's relatives would be paying defendant's child support and other financial obligations in the order. Nevertheless, the trial court ordered that defendant would be obligated to make the payments whether or not he went back to Egypt and that his attorney could make an application for modification if necessary.
Defendant voluntarily returned to Egypt in January 2002. Despite numerous petitions, defendant has been unable to obtain a visa to return to the United States. Plaintiff obtained asylum here based on her religion.
In the divorce proceedings thereafter brought by plaintiff, defendant was placed in default for failure to provide certain discovery. The judgment of divorce, dated March 23, 2005, and the amended judgment of divorce, dated May 2, 2005, continued the child support payments at the rate of $175 per week. On May 4, 2005, defendant moved for reconsideration, and the trial court reopened the judgment of divorce in order to review defendant's support obligations.
In that proceeding, defendant submitted his certification of July 11, 2005, to the trial court, stating that the gold shop he had with his father in Cairo went out of business due to economic conditions, and that he was now working as a perfume salesman earning the equivalent of $86 per month. Defendant provided the trial court with a copy of his labor contract for this new job, together with its translation. He also set forth in his certification the income from the family business he had with his father from 1998 to 2004; he calculated the net proceeds after payment of taxes; and he submitted a tax document (translated into English) verifying the deductions he made for taxes. Defendant advised that the family had been able to maintain a middle-class lifestyle in Cairo, living in an apartment with rent of $17.24 per month. His submissions to the trial court also included materials on the conversion rate between Egyptian currency and U.S. dollars and a copy of an Egyptian newspaper article indicating that, according to the latest statistics of the Arab Economic Union Counsel, the average per capita income in Egypt was $1304 U.S. dollars in 2002.
Plaintiff questioned the defendant's income figures noting the comfortable lifestyle the family led in Egypt and the three trips the family took to the United States. She also stated that the figures used for *511 tax purposes in Egypt were different from the actual income figures. While plaintiff asserted that defendant had other assets, she also acknowledged that her husband did not reveal his financial affairs to her. She presented no evidence on the cost of maintaining a comfortable lifestyle in Egypt.
By order of March 21, 2006, the trial court decreased defendant's child support payments to $125 per week and directed that he pay an additional $25 per week toward arrears. Defendant then filed this appeal. On November 2, 2006, the Appellate Division remanded the case so that the trial court could provide findings of fact and conclusions of law.
On remand, the trial court set forth the basis of its decision on the record on August 14, 2007. The trial court explained that it had imputed to defendant income of $680 per week, representing the gross amount a retail manager would make in New Jersey, and that it imputed to plaintiff earnings of $300 per week, reflecting the amount a waitress would make in New Jersey. Using these figures, defendant's child support obligation was calculated to be $125 a week pursuant to the guidelines under Rule 5:6A and Appendix IX of the Court Rules. No adjustment was made for the differential in earnings between a store manager in New Jersey and one in Egypt.
Defendant objects to the trial court's imputation of income to him based on the earnings of a store manager in New Jersey because he is unable to work here and because the income he can earn in Egypt is dramatically lower. He contends that he is unable to pay the support award because it exceeds his income.

II
Our standard of review of the trial court's decision to impute income of a specified amount is well settled. We will not disturb the court's discretionary authority unless "the court abused its discretion, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." Storey v. Storey, 373 N.J.Super. 464, 479, 862 A.2d 551 (App.Div.2004). When imputing income, the trial court must decide whether the circumstances warrant the imputation of income, and if so, it must then determine the amount of income to impute.
When calculating child support payments, the court may impute income to a parent whose income cannot be determined. Tash v. Tash, 353 N.J.Super. 94, 99, 801 A.2d 436 (App.Div.2002). Further, the court may impute income to a parent where the parent has voluntarily become underemployed or unemployed without just cause. Caplan v. Caplan, 182 N.J. 250, 268, 864 A.2d 1108 (2005). When determining whether to impute income, the court must consider four factors: (1) "the employment status and earning capacity of the parent ... if the family had remained intact;" (2) "the reason and intent for the voluntary underemployment or unemployment;" (3) "the availability of other assets that may be used to pay support;" and (4) "the ages of any children in the parent's household and child-care alternatives." Child Support Guidelines, Pressler, Current N.J. Court Rules, Appendix IX-A(12) to R. 5:6A at 2293 (2008).

A
Plaintiff argues that income should be imputed to defendant based on what he could earn in New Jersey, because defendant voluntarily left New Jersey. This argument relies on Deegan v. Deegan, 254 N.J.Super. 350, 603 A.2d 542 (App.Div. 1992), where we noted that child support *512 obligations may continue notwithstanding the payor spouse's voluntary retirement or change of lifestyle. Id. at 354-59, 603 A.2d 542. This argument fails here, however, because defendant maintains that his visitor visa did not authorize him to work here, and nothing in the record contradicts that assertion. The guidelines regarding imputation of income require that the court consider "the reason and intent for the voluntary underemployment or unemployment." Pressler, supra, Appendix IX-A(12) at 2293. Defendant has a compelling reason for not working here. Indeed, it would be contrary to public policy to impute to defendant income that he could earn only if he had violated his visa restrictions. Further, his visa was valid for only five years.
We also reject plaintiff's argument that defendant should have sought asylum as she did in order to remain in the United States and work here. Defendant obviously did not believe that he needed asylum, nor is there any proof in the record that he could have obtained it. Further, when a person comes to the United States for an extended visit with his family, and his marriage breaks up during that stay, we cannot impute to him income that would effectively require him to remain in the United States and give up his native land in order to meet child support obligations set in accordance with American standards.
The guidelines provide that when determining whether or not to impute income, the court should consider "what the employment status and earning capacity of [the payor] parent would have been if the family had remained intact." Pressler, supra, Appendix IX-A(12) at 2293. Since the parties were in the United States only on visitor visas, we must presume that had the family remained intact it would have returned to Egypt, as it did after an earlier visit. Hence, only the wages defendant may earn in Egypt are relevant when determining his support obligations. Accordingly, we find no basis to impute to defendant income based on New Jersey wages, since he is not voluntarily underemployed by virtue of leaving this State and returning to Egypt.

B
The trial court imputed income to defendant because it determined that it could not accurately ascertain his actual income in Egypt. See Tash v. Tash, supra, 353 N.J.Super. at 99, 801 A.2d 436 (allowing a court to impute income when income cannot be determined). Having decided to impute income to defendant, the trial court then attributed income to him based on New Jersey wages. The record, however, does not contain an adequate factual basis to support the imputation of income based on New Jersey wages since that amount bears no relationship to defendant's earnings or ability to earn money in Egypt.
Here defendant presented specific evidence of his earnings in Egypt at the time of the hearing and also evidence of his income earned in Egypt prior to the family's last visit to the United States. These figures could have been used to calculate his child support payments. Plaintiff questioned the validity of these figures based on the family's comfortable lifestyle in Egypt and argued that the figures used for tax purposes in Egypt were different from the actual figures. The trial court accepted her position. However, plaintiff failed to present any evidence showing how much it would cost a family of similar size to sustain that lifestyle in Egypt. Mere doubts about the validity of defendant's proofs did not provide a factual basis to impute income to defendant based on New Jersey wages. Indeed, given the fact that the family paid $17.24 a month in *513 rent when it was enjoying that comfortable lifestyle, the family may have been able to maintain that lifestyle based on the income defendant contends that he earned then.[2]
The imputation of income must be "based on a realistic assessment of capacity to earn." Storey v. Storey, supra, 373 N.J.Super. at 474, 862 A.2d 551. Indeed, the underpinnings for a support award is the obligor's ability to pay. Dorfman v. Dorfman, 315 N.J.Super. 511, 516, 719 A.2d 178 (App.Div.1998). When income is imputed to an obligor, the foundation of the award is the obligor's ability to pay that amount. See ibid. This circumstance is not present here. Defendant is unable to earn in Egypt the income that he would have been able to earn if he were permitted to work in New Jersey. We find no basis to allow defendant's child support payments to be based on New Jersey wages when the record reveals that defendant is living and working in a foreign land under very different economic circumstances than here.
We note that the Child Support Guidelines do allow the court to impute income based on New Jersey wages in certain situations. See Pressler, supra, Appendix IX-A(12) at 2292-93. However, Rule 5:6A allows the court to modify or disregard the guidelines "where good cause is shown." "Good cause" includes "other relevant factors which may make the guidelines inapplicable or subject to modification" or "the fact that injustice would result from the application of the guidelines." R. 5:6A. Imputing income based on New Jersey wage levels would be unjust and futile in the circumstances of this case, where the supporting parent is unable to work in New Jersey due to no fault on his part and is located in a foreign country where his earnings will be dramatically less than the amount he could earn here.
In summary, the amount of defendant's child support obligation must be based on the income that he currently earns in Egypt, or if income is imputed to him, it must be based on what he can earn in Egypt. We reverse and remand so that the trial court can reevaluate this record or in its discretion reopen the record for further evidence in order to fix defendant's child support payments in accordance with this opinion. As the trial court indicated in its order of March 21, 2006, the adjustment in the child support payments will be retroactive to May 4, 2005, the date defendant filed his motion for reconsideration of his support obligations. See N.J.S.A. 2A:17-56.23a.
NOTES
[1] The record does not show definitively whether this employment was authorized by plaintiff's immigration status.
[2] Notably, the trial court was not confronted with an application to modify an existing child support award, where the party seeking modification "has the burden of showing such `changed circumstance' as would warrant relief from the support or maintenance provisions involved." Compare Lepis v. Lepis, 83 N.J. 139, 157, 416 A.2d 45 (1980). Had the court previously determined, based on the parties' finances, that a weekly support award of $175 was appropriate, defendant would have had the burden to show that an increase or decrease in his income warranted a downward modification. Id. at 151, 416 A.2d 45 (listing the "increase or decrease in the supporting spouse's income" as a ground for modification); see, e.g., Walles v. Walles, 295 N.J.Super. 498, 513, 685 A.2d 508 (App.Div. 1996) (upholding a downward modification of child support where competent evidence showed a decrease in the income of the supporting spouse). However, the court in this case had not previously determined a child support award on the merits.