**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0268-21

C.O.,[1]

    Plaintiff-Appellant,

v.

S.H.,

    Defendant-Respondent.

_____

Submitted September 13, 2022 – Decided October 4, 2022

Before Judges Messano and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FD-16-0393-21.

Bozanian McGregor LLC, attorneys for appellant (Elton John Bozanian, of counsel and on the briefs).

James M. Doyle, attorney for respondent.

PER CURIAM

---

[1] We use initials to protect the identity of the parties, <u>see</u> <u>R.</u> 1:38-3(d)(12) and (d)(13), and pseudonyms for ease of reference.

In this non-dissolution matter, plaintiff C.O. (Father) appeals from an August 17, 2021 Family Part[2] order: (1) granting defendant S.H. (Mother) motion to establish child support by imputing Father's income based on his pre-pandemic salary; and (2) denying Father's cross-motion for the immediate appointment of a reunification therapist to facilitate parenting time with the parties' only child, A.H. (Anna). On appeal, Father challenges both rulings, and belatedly contends genuine issues of fact required a plenary hearing. We disagree and affirm.

I.

Trained at The Julliard School, the parties are professional musicians. Their romance was fleeting, ending several months before Anna was born in November 2006. The litigation that ensued, however, was protracted and hotly contested, due in large part to Mother's resistance to sharing parenting time with Father. For the first few years of her life, Anna lived with Mother in New Jersey. Father, who resided in New York, did not meet Anna until October 2007, shortly before her first birthday.

---

[2] All references to the Family Part in this decision refer to the family courts of the Superior Court of New Jersey, Chancery Division.

A-0268-21

We summarize the parties' prior litigation to give context to defendant's contentions on appeal. Mother lost custody of Anna in 2010 after the Division of Youth and Family Services (DYFS)[3] substantiated allegations that Mother falsely accused Father of sexually abusing Anna. Following a fact-finding hearing, a Family Part judge found Mother had abused or neglected Anna. Mother appealed from the judge's December 6, 2011 order, and we affirmed. N.J. Div. of Youth & Fam. Servs. v. C.O., No. A-2387-11 (App. Div. Nov. 27, 2012). On June 3, 2013, after a best-interests-of-the-child hearing that spanned five trial days, the same judge awarded Father sole legal and physical custody of Anna.

About a decade after DYFS substantiated allegations against Mother, the custody tables turned again. On May 6, 2020, Father was arrested and charged with child endangerment by New York State authorities when thirteen-year-old Anna reported Father physically assaulted her in their Peekskill home. A temporary order of protection was issued in the criminal action, barring Father from contacting Anna (May 6, 2020 TOP). Pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), N.J.S.A. 2A:34-53 to -

---

[3] Effective June 29, 2012, DYFS was renamed the Division of Child Protection and Permanency. L. 2012, c. 16.

95, a Family Part judge thereafter awarded Mother sole legal and physical custody of Anna.[4] The Family Part judge permitted Father parenting time only upon Anna's request and the approval of the New York authorities. On October 13, 2020, the New York family court appointed a mental health professional to commence "therapeutic supervised visits" between Father and Anna, when the evaluator "determines that the [c]hild is ready to start." (October 13, 2020 order appointing a mental health professional).

On January 22, 2021, the New York family court modified, on consent of the parties and consideration of the May 6, 2020 TOP, the Family Part's June 3, 2013 custody and visitation order (January 22, 2021 consent order). The parties agreed that Mother would share legal custody of Anna and that she would reside with Mother. The order permitted "[F]ather's parental access to" Anna "at such times and places as mutually agreed upon by the parties, after taking into consideration the wishes and desires of [Anna], with such access occurring in

---

[4] The UCCJEA establishes procedures for determining the appropriate forum when the child has ties to both New Jersey and another state or country. "Physical presence of, or personal jurisdiction over, a party or child is neither necessary nor sufficient to make a child custody determination." N.J.S.A. 2A:34-65(c). Because New York was considered the child's home state for the prior seven years, the Family Part in this case determined New York retained "overall jurisdiction."

4

the presence of her mother or another adult." The parties agreed that Father could send correspondence and videos to Anna via email and regular mail.

The present litigation was initiated by Mother on March 24, 2021. Among other relief, Mother moved to establish child support, retroactive to May 6, 2020. Father opposed Mother's motion and cross-moved, primarily seeking the appointment of an independent reunification therapist to reestablish communication with Anna and facilitate reinstatement of his parenting time. Father also sought Anna's new telephone number; the establishment of video and telephone contact with his daughter; and other relief.

According to his July 8, 2021 certification in opposition to Mother's motion and in support of his cross-motion, Father acknowledged his child support obligation. Employed as a musician for Broadway shows, Father certified he had "earned between $70,000 and $90,000 annually" prior to the COVID-19 pandemic. When the motions were filed, Father was unemployed. He asserted that because he was "not a regular on any shows," after Broadway reopened, he "w[ould] be relegated to substitution for other musicians on an ad hoc basis." Claiming he could not predict when his income would return to its pre-pandemic level, Father stated he had "begun voluntarily paying [Mother]

A-0268-21

$117.00 per week based upon [his] current unemployment [income] and [Mother's] income" of $83,096.00 per year.

Oral argument on the motions was held remotely on August 12, 2021, with both parties present during the Zoom conference. Prior to argument that day, the motion judge conferred with counsel as to his preliminary rulings on each application. Counsel then met with their clients in breakout rooms and resolved many of the outstanding motions. Later that day, the judge heard argument on the remaining motions, and issued a memorializing order on August 17, 2021.

Pertinent to this appeal, the judge granted Mother's request for child support, retroactive to the date of her application for relief. See, e.g., Ibrahim v. Aziz, 402 N.J. Super. 205, 214 (App. Div. 2008). The judge fixed the amount of child support at $181.00 per week, based on Mother's $83,000 current annual income, and by imputing to Father $80,000 per year, based on his pre-pandemic income. Although the judge acknowledged the "challenging times" caused by the COVID-19 pandemic, he reasoned "both parents have an obligation to support their child to the best of their ability, and neither parent should be allowed to remain underemployed because of circumstances." The judge cited Father's failure to present any evidence of his efforts to obtain "other

employment that's commensurate with what he was earning before the pandemic."

The judge also denied Father's cross-motion for an independent reunification therapist. The judge concluded Father presented no evidence demonstrating a change of circumstances that would warrant modification of the parties' January 22, 2021 consent order. The judge permitted Father "to speak with the child's therapist to obtain updates on A[nna]'s readiness to attend reunification therapy." The August 17, 2021 order further provided that the therapist would notify the parties when Anna was ready to begin reunification therapy. This appeal followed.

Father raises three points for our consideration. In essence, Father contends the motion judge: (1) erroneously imputed father's pre-pandemic income without making specific findings that he was voluntarily unemployed; (2) failed to appoint an independent reunification therapist and abused his discretion by ordering Anna's therapist to advise the parties as to the child's readiness for reunification; and (3) failed to conduct a plenary hearing on both issues.

II.

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)). "We will reverse only if we find the trial judge clearly abused his or her discretion." Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012). We review legal decisions de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012).

A.

As a preliminary matter, we reject Father's belated argument that the motion judge failed to conduct a preliminary hearing as to either issue raised on appeal. In his merits brief, Father cites a handful of examples from the parties' certifications, which he claims disclosed genuine issues of material fact necessitating a plenary hearing. Father chiefly contends Mother: "ignored or attempted to substantially downplay" the "substantial history of alienation" during the years prior to the May 6, 2020 incident as detailed in Father's

certification; erroneously claimed she "supported" and "encouraged" communication between Father and Anna after the May 6, 2020 incident; and "countered that [Father] failed to establish any good faith attempt to find substitute employment." Notably, however, Father made no request for a plenary hearing in response to Mother's motion for child support, in his cross-motion for a reunification therapist, or during oral argument.

Because Father's argument was raised for the first time on appeal – and was neither "jurisdictional in nature" nor "substantially implicate[d] a public interest" – we need not consider the issue. See N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 339 (2010); see also Gormley v. Wood-El, 218 N.J. 72, 106 (2014). We have nonetheless considered Father's belated contentions in view of the governing principles and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following brief comments.

We have long recognized "the power of a trial judge to hear and decide motions . . . exclusively upon affidavits." Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976). A plenary hearing should be ordered "only where the affidavits show that there is a genuine issue as to a material fact, and that the trial judge determines that a plenary hearing would be helpful." Ibid.; see also

Spangenberg v. Kolakowski, 442 N.J. Super. 529, 540 (App. Div. 2015). The necessity of a plenary hearing must be demonstrated by the movant. Hand v. Hand, 391 N.J. Super. 102, 106 (App. Div. 2007). "Without such a standard, courts would be obligated to hold hearings on every modification application." Lepis v. Lepis, 83 N.J. 139, 159 (1980).

In the present matter, Father cites Mother's general denial of his claims. He fails to demonstrate a material factual dispute that would require a plenary hearing on either ruling challenged in this appeal. See Spangenberg, 442 N.J. Super. at 540. We therefore find no error, let alone plain error, in the judge's failure to conduct a plenary hearing. R. 2:10-2 (directing the appellate court to disregard an error "unless it is of such a nature as to have been clearly capable of producing an unjust result").

## B.

We turn to Father's second point, contending the motion judge erroneously imputed his pre-pandemic income without making specific findings that he was voluntarily unemployed. Although seemingly asserting otherwise at the outset of his argument, Father acknowledges a change of circumstances occurred in May 2020, when Anna moved in with Mother, "warrant[ing] a modification of child support obligations." We focus instead on Father's argument that the

motion judge failed to consider the Child Support Guidelines when imputing income. See Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 3, www.gannlaw.com (2023).

When the trial judge has determined that a party is voluntarily unemployed or underemployed, the judge has the discretion to impute income. Caplan v. Caplan, 182 N.J. 250, 268 (2005). "In determining whether to impute income, the guidelines instruct that the trial court must first determine whether the parent has just cause" for voluntarily remaining unemployed or underemployed. Ibid.; Golian v. Golian, 344 N.J. Super. 337, 341 (App. Div. 2001) ("Income may be imputed to a party who is voluntarily unemployed or underemployed.").

There are, however, no bright-line rules governing the imputation of income. Larbig v. Larbig, 384 N.J. Super. 17, 23 (App. Div. 2006); see also Caplan, 182 N.J. at 270. "Imputation of income is a discretionary matter not capable of precise or exact determination but rather requiring a trial judge to realistically appraise capacity to earn and job availability." Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004). Thus, if the judge finds the parent was voluntarily unemployed or underemployed, the judge should impute income equivalent to that parent's potential earning capacity, "not his or her actual

income."  Halliwell v. Halliwell, 326 N.J. Super. 442, 448 (App. Div. 1999).  On appeal, a trial judge's imputation of a specific amount of income "will not be overturned unless the underlying findings are inconsistent with or unsupported by competent evidence."  Storey, 373 N.J. Super. at 474-75.

In the present matter, the motion judge acknowledged the uncertainty of the theater industry in view of the then-existing, pandemic-related shutdown.  However, the judge found the shutdown was "a temporary circumstance."  Referencing our decision in Larbig, the judge recognized "there [wa]s no bright-line rule" as to "when a judge can make a decision that a temporary circumstance has become permanent."  The judge elaborated:

> In this case my finding is that while it's unfortunate that [Father] is not able to work at the present time as a musician, it doesn't mean that he can't seek to find other employment that pays him a salary that's commensurate to what he was making while he was employed as a musician.  He's presented nothing that shows that he's made any efforts to find another job.  I don't think I can allow him to just sit back and say, "I hope that things will get better.  I'm not going to be able to pay my appropriate amount of child support until things get better."

Based on the motion record, we are persuaded the judge properly imputed Father's income and set the child support in accordance with the guidelines.  Father presented no evidence to substantiate his contention that he was unable

to find gainful employment of any kind to support Anna during the pandemic shutdown. He identified no positions he applied for, no prospective employers he contacted, or any efforts to obtain work through a job search agency. Contrary to Father's assertion, the judge made the requisite factual and legal findings. See R. 1:7-4(a)

Further, because Father certified his pre-pandemic earnings as a Broadway musician were "between $70,000 and $90,000 annually," we discern no error in the judge's decision to impute income at $80,000. The amount was fair and appropriate, and based on the judge's realistic assessment of Father's earning capacity. See Storey, 373 N.J. Super. at 474.

C.

Little need be said regarding Father's final argument that the motion judge erroneously denied his request for the appointment of an independent reunification therapist. Claiming his application only "was intended to satisfy conditions precedent to the reinstatement of parenting time," Father argues the motion judge incorrectly applied the change of circumstances test to conclude he failed to present any evidence warranting modification of the January 22, 2021 consent order. See Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004) (recognizing custody orders are subject to revision based on a change of

13

circumstances). Citing our decision in P.T. v. M.S., 325 N.J. Super. 193, 216 (App. Div. 1999), Father further argues the judge "improperly abdicated [his] decision-making authority to the child's therapist." We disagree.

Father's application necessarily impacted his parenting time with Anna. Indeed, Father's merit's brief acknowledges, "his ultimate goal is to reinstate his parenting time." However, Father's in-person parenting time was circumscribed by the January 22, 2021 consent order and the October 13, 2020 order appointing a mental health professional. The motion judge properly considered the orders entered by the New York family court, finding Father failed to demonstrate a change of circumstances warranting modification of his parenting time.

Further, the judge was persuaded the child's present therapist would address the potential for future reunification. According to the judge:

> [B]oth parties should be guided by what the recommendations are of the therapist. I mean the child's being treated with the therapist. If the therapist feels that additional contact is warranted, she can certainly advise both parents of that. If she feels that . . . reunification therapy is necessary, she can certainly advise us of that. But at this point I can't issue an order based on what the therapist may or may not find. Let's wait . . . to see what the therapist has to say, and we can all be guided by the therapist's recommendations.
>
> [(Emphasis added).]

A-0268-21

Unlike the child's therapist in P.T., Anna's therapist is not "given 'sole authority' and 'sole control' over the process, including complete discretion to determine when the process had advanced to the point where reunification sessions between [the child] and her father and grandparents could take place." 325 N.J. Super. at 204-05. Here, the judge expressly stated the therapist's recommendation would guide the court and the parties. The judge did not relinquish his decision-making authority. We conclude the judge properly denied Father's application for appointment of an independent reunification therapist.

To the extent we have not addressed a particular contention, it is because either our disposition makes it unnecessary, or the contention was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0268-21