**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3284-22

S.R.K.,[1]

    Plaintiff-Respondent,

v.

F.B.,

    Defendant-Appellant.

_____

> Submitted May 28, 2024 – Decided August 8, 2024
>
> Before Judges DeAlmeida and Berdote Byrne.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FD-20-0766-23.
>
> Jardim, Meisner & Susser, PC, attorneys for appellant (Jessica Ragno Sprague, on the brief).
>
> Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials and a fictitious name to protect the child's identity. See R. 1:38-3(d).

Defendant-mother appeals from the trial court's June 27, 2023 order awarding parenting time to plaintiff-father, and requiring him to pay her $224 a week in child support. She argues the trial court erred in granting plaintiff parenting time without first ordering mediation, a best interest evaluation, or a plenary hearing as requested. Defendant also contends the trial court's child support award is not supported by the record and requires we reverse and remand the court's order. She further requests we remand this case to another judge because the trial judge exhibited bias in favor of plaintiff. Because we conclude the trial court should have held a plenary hearing regarding the child's best interest, we vacate the order, and reverse and remand for a plenary hearing before a different judge.

I.

The parties are parents to Amanda, born in the Fall of 2020. The parties moved in together in New York when defendant learned she was pregnant. Their relationship was largely acrimonious and the two soon parted ways. Plaintiff first moved to North Carolina and then rented an apartment in Atlanta, Georgia, where he presently resides. Defendant and Amanda moved to New Jersey to be closer to her family in March 2021. Plaintiff and defendant briefly remained in cell-phone contact, and defendant allowed plaintiff to video call Amanda.

2

Defendant, however, refused to allow plaintiff to see Amanda in person, citing her personal fears of his alleged violent behavior, and his unwillingness to receive a COVID vaccination. Due to their inability to communicate well, their attempts at co-parenting devolved. Defendant claimed plaintiff insulted her and used derogatory language, which is why she prevented plaintiff from communicating with Amanda.

Plaintiff filed a verified complaint on November 23, 2022, seeking joint legal custody and parenting time with Amanda. Plaintiff alleged he had not seen Amanda in the two years after he and defendant separated, and defendant repeatedly frustrated his efforts to see Amanda or be a part of her life.

Defendant filed a counterclaim seeking child support and supervised parenting time for plaintiff until a best interest evaluation could be conducted. Defendant alleged she moved out of the parties' shared apartment because of plaintiff's violent behavior towards his stepfather, his violent outbursts towards her, and his mental health issues. In her certification, she alleged she read plaintiff's "medical records from the military that indicated [plaintiff] suffers from PTSD . . . and was concerned by the recommendations/requirements that the military made which [defendant] knew he was not complying with." She also claimed to have read an email containing "a background report that showed

3

various criminal offenses that involved . . . plaintiff, that he may not have been ultimately convicted for," which caused her further concern. Defendant alleged plaintiff was drinking and using drugs and had access to a firearm. To support these claims, defendant attached several screenshots of text messages between them, a picture of a firearm, a picture taken from a computer screen listing two criminal offenses from North Carolina, and a screenshot of an email describing a complaint filed with the New York Police Department. However, none of the proffered criminal information in the record identifies plaintiff.

Defendant sought a parenting time evaluation prior to plaintiff being allowed parenting time with Amanda. She asked the court to review plaintiff's military discharge papers and medical records in chambers due to their confidential nature and to respect his privacy. Defendant also requested a best interest evaluation before any unsupervised parenting time take place with plaintiff.

On March 22, 2023, the court heard the application. Before the court heard from defendant's counsel, it began by stating it was

> firmly convinced that what is in the best interest of the child is for the child to have as much time with both parents as possible. Mom has no greater rights than dad could to the child. So that's where we start here, and I understand you have some concerns, but dad not seeing his child all this time causes this [c]ourt grave concern.

4

Defendant argued she requested the court only take certain precautions before allowing parenting time; she did not oppose allowing plaintiff videoconferencing time with Amanda. The court immediately interjected, "Isn't that nice, he can FaceTime his child. How wonderful." Defendant continued to address her concerns for Amanda's and her own safety, which the court dismissed because no restraining order was in place. Defendant informed the court she did not think she needed a restraining order because plaintiff moved to Georgia, she currently lived in New Jersey, and plaintiff did not know where she was residing. She requested plaintiff be fully vaccinated, attend therapy, and take his medications before being allowed parenting time with Amanda.

Plaintiff candidly admitted to the court he had been diagnosed with PTSD and has been deemed fully disabled from his military service based on "multiple things. Physical. Obviously, PTSD is one of them." Plaintiff stated he had "been through . . . several conflicts, combat, . . . [and] was Special Operations." Plaintiff explained his PTSD did not require him to take medication and his status as fully disabled was predicated more on his physical condition than his mental health. He also told the court he attended therapy "for like four sessions, and it was just basically somebody to talk to, . . . [to] talk about what [he] was

going through," and did not involve medication. The court asked to see the disability documentation and plaintiff agreed to send it to the court.

Defendant then stated she had a copy of plaintiff's medical records, which she had accessed when they lived together. The court responded, "[i]t's kind of sketchy. . . . They weren't married, and she's walking around with his medical records. . . . I mean, that is really disturbing. [H]e has rights." It further stated simply cohabitating with plaintiff did not "give her the right to take his medical records." The court directed defendant to give plaintiff his records and stated it would not look at them because they were his records. It further instructed defendant to destroy any copies defendant may have but then said that if defendant wanted the court to review the documentation, it would do so. Speaking to plaintiff, the court said it "would like to see the veteran report, and then [it would] make a decision of how to proceed. In the interim, . . . we have to get you with your child."

The court inquired as to whether plaintiff had been arrested within the last year. Plaintiff said he had no criminal convictions and that he was "just at the FBI headquarters with [his] business." He also said he was part of the French president's security detail that previous Fall as part of his current executive

protection company, where he is licensed to carry a firearm and he transports clients to and from their intended destinations.

The court found it did not "have any reason not to allow [plaintiff] to see his child. . . . Even if he is disabled . . . I don't see the danger in [plaintiff] having time with his child . . . . [T]here really is no basis for me to have him go through a psychological evaluation or a . . . supervised visit." It continued, "[t]he fact that they argued, the fact that there may have been some fighting in the past between them . . . really is not a basis for this [c]ourt to make [plaintiff] jump through whatever hoops [defendant] wants . . . to make her feel safe." The trial court found:

> [I]f mom wanted dad to see the child, she would have facilitated even if she doesn't want to see him. She would have been able to facilitate something or had . . . done something short of him having to come to court to . . . order it. I just don't think she really wants him to see the child. That's obvious. . . . It's pretty clear, and there is no basis to not allow him to see the child. Veterans with PTSD, he's living a life. He's not being arrested. He's not exhibiting any dangerous behaviors. Otherwise, we wouldn't be here like this.

The court granted plaintiff unsupervised parenting time with Amanda, stating it would have to be incrementally increased until his parenting time was equalized with defendant. It then attempted to set a parenting time schedule. Plaintiff proposed the Saturday immediately after the hearing from 10:00 a.m.

7

to 6:00 p.m. at his brother's residence in New York. After further discussion, the court granted plaintiff time with Amanda on April 15 and 16, from 10:00 a.m. to 6:00 p.m., with April 29 and 30 scheduled for overnights "[i]f everything goes well . . . ." Plaintiff explained the overnights would occur at his brother's house in New York, where he would stay. Plaintiff and defendant were ordered to communicate through a parenting cell phone application to schedule further visitations.

A subsequent hearing was held May 30, 2023. The court inquired as to the status of plaintiff's parenting time, which plaintiff stated was "going well." However, he informed the court he and defendant were struggling to establish further visitations because of the increasing costs of his airfare to New York. Plaintiff informed the court he was flexible, but stated he wanted "a better method, . . . a plan . . . with regards to the visitation."

Defendant informed the court plaintiff had not seen Amanda since April. She stated she had offered plaintiff every weekend in May and plaintiff failed to select any date for visitation. She also stated she offered plaintiff the first and third weekends of June, and plaintiff failed to respond. Defendant proposed the parties attend mediation, as previously requested in a letter to the court.

8

Plaintiff countered that plane tickets were prohibitively expensive and if defendant was going to cut his parenting time short it did not make financial sense to see Amanda for a limited amount of time. He also asserted he was proactively trying to work with defendant on scheduling visits, but continually ran into scheduling conflicts with her.

The court noted consistent visitation was best not merely for the parties, but for Amanda, and informed the parties "we could start with a mediator here . . . . It's a court mediator that I will give you an opportunity to meet with. If that's not able to work out, then I will appoint a parenting mediator." However, rather than sending the parties to mediation, the trial court sent the parties to a virtual consent conference. There, defendant contends she sought to create a consistent schedule, whereas plaintiff "was only interested in when he could take [Amanda] to Georgia." After the consent conference proved unsuccessful, the court stated it was "not inclined to order private mediation" and would resolve the issues "then and there."

Defendant continued to request court ordered mediation based on substantive custody and parenting time issues, but the trial court stated it did not "believe it's substantive . . . . The issue is a vacation schedule. So that's not substantive, and you're not going to mediation for it." After hearing from both

9

parties, the court granted plaintiff parenting time in Georgia for the first and third weekends of June, and then the 25th through to the end of the month, with alternating weekends thereafter to occur. When defendant inquired into living and childcare arrangements, plaintiff said he would show his apartment and that he would be personally caring for Amanda. Plaintiff was also granted two non-consecutive weeks in the summer. Child support was reserved until the court had an opportunity to assess the guidelines.

The court's subsequent June 27, 2023 order codified most of its rulings from May 30: defendant remained the parent of primary residence, the scheduled week of parenting time at the end of June was extended to July 2, 2023 and deemed plaintiff's first week of summer vacation with Amanda. The order also established plaintiff would pay defendant $224 per week in child support, effective March 14, 2023, with payment of arrears set at $25 weekly. The court found good cause to deviate from the child support guidelines because the case involved "an extreme income situation due to [defendant's] high earnings. The court deem[ed] it not equitable for [plaintiff] to pay a higher award under these circumstances." As such, the court found the $224 weekly award "to be fair and equitable under the current facts."

10

Defendant moved to stay the order pending appeal, which the trial court granted. Defendant filed her notice of appeal on June 30, 2023, and the trial court issued an "Amplification of Decision and Order" on July 11, 2023 (the Amplification). The Amplification expanded upon the court's rationale for its initial March 22, 2023 order and briefly discussed the factors enumerated in N.J.S.A. 9:2-4(c). It also explained why it declined to order mediation and how it calculated plaintiff's child support obligations.

II.

Our review of "a trial court's findings in a custody dispute is limited." W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021). We extend significant deference to the Family Part's discretionary decisions, provided those decisions are supported by adequate, substantial, and credible evidence in the record. D.A. v. R.C., 438 N.J. Super. 431, 451 (App. Div. 2014). "A proper exercise of judicial discretionary authority 'connotes conscientious judgment, not arbitrary action; it takes into account the law and the particular circumstances before the court.'" Ibid. (quoting Higgins v. Polk, 14 N.J. 490, 493 (1954)). Unlike factual findings, issues of law are subject to de novo review. W.M., 467 N.J. Super. at 229.

## III.

When two parents cannot agree on issues affecting their child, the court must act in the best interest of the child in making determinations regarding custody and parenting time. See N.J.S.A. 9:2-4. The Family Part, acting as parens patriae, is empowered to act in the best interest of the child. Parish v. Parish, 412 N.J. Super. 39, 52-53 (App. Div. 2010). Indeed, the child's best interest is "the touchstone for all custody determinations . . . ." J.G. v. J.H., 457 N.J. Super. 365, 375 (App. Div. 2019) (quoting Faucett v. Vasquez, 411 N.J. Super. 108, 118 (App. Div. 2009)). "In custody cases, it is well settled that the court's primary consideration is the best interests of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). This best interest standard "protects the 'safety, happiness, physical, mental[,] and moral welfare of the child.'" Beck v. Beck, 86 N.J. 480, 497 (1981) (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)). In contested custody cases, the court "must reference the pertinent statutory criteria with some specificity," Kinsella v. Kinsella, 150 N.J. 276, 317 (1997) (quoting Terry v. Terry, 270 N.J. Super. 105, 119 (App. Div. 1994)), and "specifically place on the record the factors which justify" the arrangement, N.J.S.A. 9:2-4(f).

N.J.S.A. 9:2-4 requires family courts consider a non-exhaustive list of factors when making an initial award of custody and parenting time, including:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interactions and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents; employment responsibilities; and the age and number of the children.

Although N.J.S.A. 9:2-4 requires family courts begin by presuming equal parenting time to both parents, see W.M., 467 N.J. Super. at 229, any of the enumerated factors may affect that calculation. Moreover, any credible risk of harm must be taken into consideration in determining what is in the best interest of the child. See E.S. v. H.A., 451 N.J. Super. 374, (App. Div. 2017) ("A parent's custody or visitation 'rights may be restricted . . . where the relation of one parent (or even both) with the child cause emotional or physical harm to the child . . . .'") (quoting Wilke v. Culp, 196 N.J. Super. 487, 496 (App. Div. 1984)).

A. <u>Parenting Time Mediation</u>.

Pursuant to <u>Rule</u> 1:40-5(a), "[a]ll complaints . . . involving a custody or parenting time issue shall be screened to determine whether the issue is genuine and substantial, and if such a determination is made, the matter shall be referred to mediation for resolution in the child's best interests." <u>See also</u> <u>R.</u> 5:8-1. When parents "cannot agree to a custody or parenting time/visitation arrangement, the parties must each file a Custody and Parenting/Time Visitation Plan, which the court shall consider in awarding and fixing a parenting time or visitation schedule." <u>R.</u> 5:8-5(a).

The trial court erred in summarily ordering a parenting time schedule without mediation or consideration of the parties' proposed parenting time plans. Although it addressed the best interest factors codified at N.J.S.A. 9:2-4 in the Amplification, it made conclusory observations and no factual findings, contrary to <u>Rule</u> 1:7-4(a). The court simply stated defendant failed to adduce any evidence to support her allegations. Although a non-dissolution matter may initially be brought as a summary action, discovery or a plenary hearing may be had "upon application of either party . . . ." <u>R.K. v. D.L., Jr.</u>, 434 N.J. Super. 113, 133 (App. Div. 2014) (quoting <u>R.</u> 5:4-4(a)).

The trial court declined defendant's repeated applications for discovery, mediation, or a plenary hearing.  The Amplification states defendant did not meet her prima facie burden to warrant mediation or a plenary hearing and cites Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007).  Hand, however, dealt with a motion to modify an existing court order and transfer custody from the defendant to the plaintiff where the parties had prior custody and parenting time orders in place.  Id. at 103-04.  In contrast, no initial custody determination was ever made in this case and no initial parenting time was ever agreed to or ordered by the court.

The family court erred in making an initial award of custody and parenting time without ordering a best interest evaluation, reviewing any evidence, or taking any testimony from the parties to assess their credibility.  Despite defendant's concerns that plaintiff's PTSD posed a risk to Amanda if he acted as her unsupervised caregiver, and plaintiff's admission he suffered from PTSD, the family court did not assess the risk plaintiff posed to then three-year-old Amanda, if any.  It declined to review the medical records, even though plaintiff agreed to produce them.

Even in the absence of plaintiff's alleged risk in parenting Amanda, the court did not consider the geographical distance between the parties in awarding

parenting time to defendant every other weekend in Georgia and did not assess whether it is in a three-year-old's best interest to subject her to that amount of travel every other weekend. It did not delve into any of the statutory factors to determine an arrangement that would be in Amanda's best interest. Nor did it require the parties submit proposed Custody and Parenting/Time Visitation Plans pursuant to Rule 5:8-5(a). Instead, the court sent the parties to a consent conference and when that failed, it simply chose a parenting schedule based on what plaintiff represented was best for him, abrogating its parens patriae responsibility to act in Amanda's best interest.

The court's after-the-fact recitation of the best interest factors in its Amplification further fails to address how Amanda's best interests are served by the ordered parenting time arrangement. J.G. v. J.H., 457 N.J. Super. 365, 374 (App. Div. 2019) (quoting Bisbing v. Bisbing, 230 N.J. 309, 322 (2017)). The Amplification instead focuses upon the shortcomings in defendant's complaint and plaintiff's lack of contact with Amanda over the preceding two years.

At minimum, mediation is required when parties seek diametrically opposed custodial arrangements and present conflicting representations of material facts. See J.G., 457 N.J. Super. at 371-72, 375; D.A., 438 N.J. Super. at 452-53, 460. Moreover, a "thorough" plenary hearing is required when

16

mediation fails to resolve the custody or parenting time dispute and materially conflicting factual allegations, such as potential risk to the child, remain. J.G., 457 N.J. Super. at 372.

Concerning parenting time in particular, decisions made without evidence and without examination and cross-examination of witnesses are wholly insufficient. Id. at 373 (quoting Fusco v. Fusco, 186 N.J. Super. 321, 327 (App. Div. 1982)). Indeed, "the matter of [parenting time] is so important, especially during the formative years of a child, that if a plenary hearing will better enable a court to fashion a plan of [parenting time] more commensurate with a child's welfare . . . it should require it." Ibid. (third alteration in original) (footnote omitted) (quoting K.A.F. v. D.L.M., 437 N.J. Super. 123, 138 (App. Div. 2014)). We generally reverse and remand for further proceedings when the family court does otherwise and in the face of genuine, material factual disputes. K.A.F., 437 N.J. Super. at 138.

Defendant raised several concerns regarding plaintiff's mental health that were not addressed by the trial court at the March 22 hearing. These issues are in addition to the still-unknown conditions of plaintiff's residence, and his ability to care for a young child while running a business that appears to take him away from his Atlanta residence for extended periods of time. Regarding his

17

employment, the court only noted plaintiff "admits to being on the road a lot, [but] agree[s] to work his schedule around his parenting time with" Amanda.

Because the trial court's parenting time award did not assess whether it was in Amanda's best interest, and was entered without the benefit of prior mediation or a plenary hearing, we vacate the order and remand for further proceedings. The court, upon remand, may enter an interim parenting time schedule as it sees fit.

B.    The Child Support Award.

Pursuant to Rule 5:6A, a family court must utilize the Child Support Guidelines when establishing a child support obligation unless shown good cause otherwise. Gormley v. Gormley, 462 N.J. Super. 433, 450 (App. Div. 2019). "If a [judge] determines deviation from the guidelines is appropriate, [the judge] must nevertheless calculate the guidelines-based support award and state the specific findings justifying its deviation therefrom -- specifically, why deviation is in the best interests of the child." Ibid. (alterations in original) (quoting Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594 (App. Div. 2016)). The chosen award should be based on the factors enunciated in N.J.S.A. 2A:34-23 or N.J.S.A. 9:17-53. Id. at 450-51 (quoting Pressler & Verniero,

18

Current N.J. Court Rules, Appendix IX-A to <u>R.</u> 5:6A at ¶ 3, www.gannlaw.com (2019)).

Child support belongs to the child, not the parent of primary residence. Although that parent uses the support in her day-to-day parenting, any discrepancy between the income of the parents is not taken into consideration because every child is entitled to support from every parent. <u>Ricci v. Ricci</u>, 448 N.J. Super. 546, 570 (App. Div. 2017). Here, neither the family court's original explanation nor its Amplification supports the child support award. The court did not take into consideration Amanda's rights to child support from her father in its findings.

Additionally, the court erred in imputing approximately $36,000 to plaintiff. Imputation of income is appropriate when a party is voluntarily unemployed or underemployed without just cause, <u>Gormley</u>, 462 N.J. Super. at 444 (quoting <u>Golian v. Golian</u>, 344 N.J. Super. 337, 341 (App. Div. 2001)), or when earnings cannot be determined, <u>Tash v. Tash</u>, 353 N.J. Super. 94, 99 (App. Div. 2002). Whether the trial court chose to impute income to plaintiff because of an absence of financial information or because it found he is underemployed is unknown. Plaintiff provided pay stubs indicating he paid himself approximately $312 a week in 2023, exclusive of his disability benefits.

Plaintiff's 2021 tax returns, the only returns he provided to the court, show he lost $45,885. His business reported a loss of approximately $64,000 that same year. Although imputation may have been appropriate in this instance, the present imputation lacks the requisite factual findings and legal conclusions. R. 1:7-4(a); see Gnall v. Gnall, 432 N.J. Super. 129, 158 (App. Div. 2013), rev'd on other grounds, 222 N.J. 414 (2015).

The orders are vacated, and the matter is remanded to the family court. Because the family part judge made credibility determinations, we remand to another judge for mediation, a best interest evaluation, or a plenary hearing, as necessary. See Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023) (remanding to another judge when the trial judge commented on a party's credibility and may be committed to prior findings).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION